106  282
110  556

## CLAFLIN COMPANY *et al. v.* DeVAUGHN *et al.*

1. A decree in equity is conclusive upon the parties to the case on all questions raised, or which could have been raised, relating to the property to be affected by the decree.

2. When personal property has been seized by a court of equity and one of the parties to the case has been allowed to take possession of the same upon giving bond to answer the decree to be rendered, such bond is to be treated as representing the property which was delivered to the obligor, and any party showing an interest in the property should be given a corresponding remedy upon the bond.

3. In such a case, where there are numerous parties, each claiming an interest in the property, and a decree is rendered in favor of some of them only, and in accordance therewith judgments in their favor are entered against the principal and securities on the bond, though such decree does not in express terms declare that the other parties are not entitled to judgments on the bond, yet where it is clearly inferable from the decree as a whole that such was the intention of the judge who framed it, the decree would preclude such parties from raising the question as to their interest in the property, on a money rule brought by them against the sheriff who had collected the money on an execution issued on the decree in the name of the parties in whose favor the decree had been rendered.

Argued November 15, 16,— Decided December 21, 1898.

Rule to distribute money.　Before Judge Littlejohn.　Macon superior court.　September 1, 1898.

*Hardeman, Davis & Turner* and *R. L. Greer*, for plaintiffs in error.　*J. W. Haygood, J. I. Hall* and *Guerry & Hall*, contra.

CObB, J.　On September 20, 1893, Frank & Adler and other creditors of Louis Herz brought their petition against Louis Herz, J. E. DeVaughn, John F. Lewis & Son, Gabe Lippman, J. R. Fried & Company and Joe Berckhardt, alleging that Louis Herz had sold out his stock of goods to Henrietta Herz just prior to the filing of the petition, and that before selling out the stock he had executed mortgages on the same to the other defendants.　It was alleged that the sale was fraudulent, and also that the mortgages were fraudulent and executed for the purpose of hindering and delaying creditors.　Subsequently interventions by other creditors were filed.　In the intervention filed by Claflin & Company and others, an attack was made upon the bill of sale made by Louis Herz to Henrietta Herz, upon the ground that it was in effect an attempted assignment,

and void because not executed as required by law. On this petition a temporary receiver was appointed, and the mortgagees were restrained from proceeding with their mortgages. In each of the answers filed by the mortgagees to the original petition and the interventions it was admitted that the mortgages had been foreclosed, and it was alleged that executions issued upon the foreclosure of the mortgages had been levied upon the stock of goods and that the same was in the custody and control of the sheriff. After this, by consent of all parties the following order was passed by the court: "It is ordered by the court, that the order of this court heretofore granted in the above stated case, granting a temporary injunction and appointing a temporary receiver, shall be revoked and set aside, when said Henrietta Herz shall execute a bond with good and sufficient security, payable to the clerk of the superior court of said county of Macon, conditioned to pay into court the value of the stock of goods now in the hands of the receiver, as appears from the inventory of the same as made by said receiver, and the additional sum of five hundred dollars to cover the notes and accounts in the hands of said receiver. It is ordered that nothing herein contained shall prevent the defendants in said bill from asserting their mortgage liens upon the fund arising from said bond instead of the said goods; it being the intention of this order, that as to all creditors who are parties to this litigation that said bond shall stand in place and be taken in lieu of said stock of goods, and that none of the parties to said litigation, either plaintiffs or defendants, shall lose any lien upon said property or shall suffer any change of their present status by reason of this order, but their rights shall remain the same as if this order had not been passed and said bond given. . . It is further ordered, upon consent of all parties, that in event of recovery by one or any or all the creditors in said suit against the assets for which the bond provided is to be a substitute, then, at the final trial, it is consented that judgment may be entered for amount of such recovery against the principal and securities of said bond as in cases of appeal bonds. The judgment entered not to exceed liability under said injunction bond." By amendment to the order it was provided that the bond should

be increased "to cover and include sixty-two dollars of money now in the hands of the temporary receiver, which said sum he is authorized to surrender to Henrietta Herz upon the approval of said bond as provided in the foregoing order."

Upon the passage of this order Mrs. Herz gave the bond required, the material parts of which were as follows: "The condition of the above bond is such that should the said Henrietta. Herz, principal, Gabe Lippman and E. B. Lewis securities, pay into Macon superior court, to the clerk of said superior court,. the value of the stock of goods now in the hands of the receiver,. as appears from the inventory of the same as made by said receiver, and the additional sum of five hundred dollars to cover the notes and accounts in the hands of the receiver, and the additional sum of sixty-two dollars in cash now in the hands of said receiver, M. B. Gilmore, provided that upon the trial of said case, above stated, that the said several creditors, to wit,. Frank & Adler [and others], shall succeed in securing judgment against said stock of goods or on said bond given in lieu of said stock of goods, or said assets for which said bond is given; which condition if complied with and performed, said principal and securities shall be discharged, otherwise this bond shall be of full force and virtue.  The true intention of this bond being, that as to all creditors who are parties to this litigation, that said bond shall stand in place and be taken in lieu of said stock of goods, and that none of the parties to said litigation, either plaintiff or defendant, shall lose any lien upon said property or shall suffer any change of their status by reason of the aforesaid order and this bond, but their rights shall remain as if the order had not been granted and this bond had not been given.  It is further contracted and agreed, that. should any of the creditors in said litigation, whether plaintiff or defendant, recover judgment upon the final trial of said case,. according to the terms and conditions of this bond order, then judgment may be entered for the amount of said recovery against the principals and securities on this bond as in cases of appeal bonds; judgment to be entered not to exceed liability under this injunction bond."  Upon the execution of the bond the stock of goods and assets went into the hands of Mrs. Herz

pursuant to the order. The assets were valued by the receiver at ten thousand, seven hundred and thirty-three dollars and thirty-seven cents, which included, amount of stock, $7,467.14; accounts on books, $2,571.55; notes, $245.90; cash on hand, $127. Subsequently Mrs. Herz sold the stock of goods in the usual course of trade and deposited the sums of money thus realized in a bank. The case went to trial, and after evidence submitted a verdict was returned by the jury in answer to questions propounded by the court. The verdict is divided into six parts, each relating to the issues between the defendants and one of the plaintiffs who had identified goods. The following is a copy of that part of the verdict relating to one of the plaintiffs: "(1) Did Claflin & Company, in selling the goods to Louis Herz, and which they are now claiming, rely on any statements made by Herz either to them directly, or to a commercial agency? Answer: To a commercial agency. (2) Were said statements true or untrue? Answer: Untrue. (3) Was Herz solvent or insolvent at the time he purchased said goods? Answer: Insolvent. (3a) Had his conduct been such as to create special confidence in him on the part of Claflin & Co.? Answer: It had. (3b) Did he disclose his condition to Claflin & Company at the time he purchased said goods from them? Answer: He did not. (3c) Did he conceal his financial condition? Answer: He did. (4) Did Herz buy said goods from Claflin & Company, intending not to pay for them at the time he purchased them? Answer: He did not. (6) At the time Mrs. Henrietta Herz claims to have purchased the stock of goods and other assets of Louis Herz, did she at that time pay him any valuable consideration therefor, and what did she pay? Answer: She paid the trust money and wages due her by L. Herz. (7) In said purchase did Mrs. Herz agree to assume and pay the mortgages which were upon said stock? Answer: She did. (8) Had she paid off said other mortgages before the proceedings were filed in this case, attacking said mortgages? Answer: She had not. (9) Had she paid any part of the purchase-price of said stock and assets before she had notice that the mortgages which she assumed were pre-existing debts? Answer: She had not. (10) Did she pay any consid-

eration for said stock and assets before the proceedings were filed in this case to set aside her bill of sale; if so, what consideration did she pay? Answer: She paid the trust money and the amount of wages due her by L. Herz. (12a) Did Mrs. Herz agree to pay the mortgages which she assumed out of the proceeds of the property covered by her bill of sale when she should sell the same? Answer: She did. (12b). Or did she agree to pay off said mortgages out of her own means and not out of the property in her bill of sale or its proceeds?"

Upon this verdict a decree was entered by the court. The decree recites that it was admitted by counsel for petitioners and defendants that the goods identified by various petitioning creditors, and which were in the stock of Louis Herz at the time that the petition and the various interventions were filed, were of values aggregating in amount the sum of $4,418.81. It further recites that it was admitted that the debts to secure which Louis Herz gave to the defendants certain mortgages were pre-existing debts, and that counsel for petitioners also admitted that Mrs. Herz had given to Louis Herz her promissory note for eight hundred dollars, which note was not paid by her until after the commencement of the proceedings to set aside the bill of sale from Louis Herz to her. The decree further recites: "The jury having found also that Mrs. Herz agreed to assume and pay the mortgages given by the said Louis Herz out of the proceeds of the property covered by said bill of sale from said Louis Herz to her, when she should sell said property, and that she had not paid off said other mortgages before the proceedings were filed in this case attacking the same, and that she had paid no part of the purchase-price of said stock and other assets conveyed to her in said bill of sale before she had notice that said mortgages, which she had assumed, were given to secure pre-existing debts, and that said Henrietta Herz having given her bond with Gabe Lippman and E. B. Lewis as sureties, under the order of this court, on the 4th day of October, 1893, in order that the said Henrietta Herz might repossess herself of the said stock of goods and other assets conveyed to her in said bill of sale, and to prevent the appointment of a receiver therefor, payable to the clerk of this court,

for the benefit of said creditors in the event they should recover in said cause, and conditioned that in the event the plaintiffs should recover in said cause they should enter judgment at once against the said Henrietta Herz and her sureties for such sums as they might eventually recover in their effort to reclaim said goods and to subject the same to the payment of their debts, it is ordered," etc. It then provides that the plaintiffs recover of the defendants, Louis Herz, Henrietta Herz, Gabe Lippman, and E. B. Lewis, the respective sums agreed by counsel to be the value of the goods identified by the plaintiffs. The decree recites further, that the defendant Louis Herz "having admitted in open court that the balance of his indebtedness to said named creditors is as hereinafter set out, and the evidence showing this fact, and he confessing that he is indebted to said several parties to said petition in the sums hereinafter set opposite their respective names, and the jury having returned a verdict finding that Mrs. Herz has agreed to pay to said other mortgagees hereinabove named the amounts of their debts out of the proceeds of the property which was conveyed to her in said bill of sale, it is ordered, adjudged, and decreed by the court that said bill of sale is void for the reason that the same, together with the finding of the jury constitutes an assignment, and is not properly executed under the laws of this State." Then follows a judgment that the plaintiffs recover of L. Herz, Henrietta Herz, Gabe Lippman, and E. B. Lewis certain amounts respectively, in addition to the sums already decreed them. The aggregate of the amounts thus decreed in favor of the plaintiffs is $2,487.56, making the entire aggregate in their favor under the decree, $6,906.37. It was further ordered that the clerk of the court issue one execution to specify in separate amounts the several sums due to each of the plaintiffs. The defendants made a motion for a new trial, which being overruled, they excepted, and entered into a supersedeas bond in order to carry the case to the Supreme Court. This bond was made payable to the clerk of the superior court of Macon county, for the use and benefit of the plaintiffs, and was conditioned to pay the said clerk for the use and benefit of the plaintiffs the eventual condemnation-money and all subsequent costs, in the

·event that the obligors in the bond should fail to prosecute their writ of error to the Supreme Court with effect.

The case came to this court, and it was held, that "The spe-·cial questions submitted to the jury were framed in accordance with and authorized by the pleadings and evidence in the case"; .and also that "There was sufficient evidence to support the ver-·dict." *Herz* v. *Claflin Co.*, 101 *Ga.* 615. After the affirmance ·of the judgment by this court, the defendants in the case brought their petition to set aside and correct the decree rendered in the original· case, upon the ground, among others, that the ·court had no authority, under the issues made in the case and the verdict of the jury, to decree in favor of the plaintiffs in that ·case any sums for goods not identified. This petition was dis-·missed on demurrer. To the decision of the court dismissing the petition the petitioners excepted, and brought the case to this court, when the judgment was again affirmed, the court, however, declining to pass upon the merits of the petition. *Herz* v. *Frank & Adler*, 104 *Ga.* 638. Execution was issued upon the decree of the court in the original case and also upon the supersedeas bond given by the defendants, and Henrietta Herz paid on the execution first mentioned the sum of $7,713.12, the same being in full satisfaction thereof. The sheriff, by agreement of all parties, paid over to counsel for the peti-tioning creditors the sum of $4,910.30, which was the amount decreed to them as the value of the goods identified by them as their own. The mortgagees then brought their petition alleg-ing that their mortgages were prior liens upon the stock of goods bought by Mrs. Herz from Louis Herz, and were prior liens upon the fund remaining in court. They alleged further that their mortgages have been foreclosed and executions issued; and prayed that the sheriff be directed to pay over to them the amounts due on their mortgages, and prayed further that the sheriff be directed to hold the money in his hands until the further order of the court. To this petition H. B. Claflin Company and the other creditors of Louis Herz who had ob-tained judgments in the decree above referred to made them-selves parties and moved the court to award the fund to them. The sheriff answered that he had received from Henrietta

Herz $7,713.12 on May 30, 1898, in full satisfaction of an exe-
cution for principal and interest amounting to that sum, which
execution was issued on a decree rendered by the judge of the
superior court of Macon county on July 15, 1896, on a verdict
rendered by a jury in that court during the May term of the
court; that on June 24, 1898, by agreement of all parties, he
had paid to the attorneys for the creditors of Louis Herz the
sum of $4,910.30, and that he has on hand subject to the order
of the court the balance of the fund paid on the execution, to
wit $2,802.82, less the costs of this proceeding. He further
answered that he had in his possession executions issued upon the
foreclosure of mortgages in favor of the original plaintiffs in
the rule, the names of the mortgagees and the amounts of each
mortgage being set forth. All of the mortgage fi. fas. are
against Louis Herz and issued upon the foreclosure of mortgages
given by Louis Herz upon the stock of goods which went into
the hands of Henrietta Herz. After considering all of the evi-
dence submitted, and which is set forth above, the court awarded
the fund, first to the payment of costs in the rule; second, to
J. E. DeVaughn until his mortgage fi. fa. should be satisfied, it
being of older date than the other mortgage fi. fas., and the sur-
plus to be distributed pro rata to the mortgages in favor of Joe
Berckhardt, John F. Lewis & Son, and J. R. Fried & Company.
To this judgment the creditors who had made themselves par-
ties to the rule excepted.

In order to determine whether or not the judgment com-
plained of in this case was erroneous, it becomes necessary at
the outset to ascertain what effect the decree rendered on July
15, 1896, had upon the rights of the various persons who were
parties to the case. If those now claiming the fund in court
under executions issued upon the foreclosure of mortgages exe-
cuted by Louis Herz are estopped by the decree from contest-
ing the right of the plaintiffs in error to this fund, the decision
awarding such mortgagees the fund was, of course, erroneous.
If they are not so estopped, then the determination of other
questions presented in the record becomes necessary. We are
of opinion that the mortgagees are concluded by the decree
from claiming any interest in the fund which was brought into

court for distribution, and therefore many questions presented in the record are unnecessary to be decided. We shall, therefore, confine ourselves to stating the reasons which have brought us to this conclusion. Louis Herz was the owner of a stock of goods. Upon this stock he executed mortgages to certain of his creditors. After the execution of these mortgages he executed a bill of sale on the entire stock to Henrietta Herz, she taking the property and agreeing to assume the payment of the mortgage liens thereon, to the extent of the value of the goods. These mortgages were foreclosed, and executions issued upon such foreclosures were levied upon the goods. Pending these levies certain unsecured creditors of Louis Herz brought their petition attacking the mortgages which had been given, as well as the bill of sale, as being fraudulent and made for the purpose of hindering and delaying creditors, some of them alleging that the goods were sold to Louis Herz upon false representations. They alleged further that the goods so sold were still in the stock in the hands of the sheriff, and prayed that they might be allowed to identify the same, and at the final hearing recover as their own the goods so identified. A receiver was appointed to take charge of the goods, the books of account, and the money on hand. The order which is set forth in the foregoing statement of facts was passed at this stage of the proceeding, and the material parts of the bond which was provided for in that order are also set forth above. Only a casual reading of the order and the bond is necessary to show with certainty that it was the intention of the judge who granted the order that the bond should in the future progress of the litigation stand in all respects as representing the property which was delivered up when the bond was given. No party, either plaintiff or defendant, was to be prejudiced in any way by the fact that what was once property had become by virtue of the order a chose in action. If any party to this litigation had any right to any interest whatever in the property in possession of Louis Herz, that right was preserved carefully in the order authorizing the execution of the bond, and was to be recognized whenever properly asserted in the court which had control of the property which had been seized under the order appointing

the receiver. It was necessary, however, that those interested in the property and whose rights were protected by the bond should assert their interests at the proper time and in the proper way, or else forfeit the same. The bond was conditioned to answer a decree. It was therefore contemplated that the rights of the parties would be fixed by a decree to be rendered in the case. When the case came on for a final hearing, the creditors who claimed to have identified goods, the creditors who had no· claim for identified goods, as well as the mortgagees, had a right to be heard on their respective claims, and this was the time in which they should have asserted their rights, as the decree which was to determine for all time their interest in the property now represented by the bond was about to be rendered. They would then have been heard, and if the rights asserted were recognized, a proper decree protecting them in their remedies upon the bond would have been rendered. If at this time they failed to assert their interests which had existed in the property, they would lose all right to any remedy upon the bond. If they asserted their rights in the property and these rights were not recognized by the trial judge, as long as the decree rendered against them stood unreversed they would be barred from any remedy upon the bond. This result would follow whether the decree in terms declared against their rights or whether from the decree as a whole it was evident that it was the intention of the judge that they should not be recognized.

In determining the extent and scope of the decree it is to be kept in mind that wherever the decree deals in any way with the bond, we must consider it as dealing with the property which the bond represented. Whenever the judge gave any person a right to proceed upon the bond, it was equivalent to recognizing an existing right in the property. If the decree failed to give any plaintiff or defendant any remedy upon the bond, it would be, in effect, a judgment that that plaintiff or defendant had no right in the property. The decree in terms gives to those creditors who had identified goods judgments against the sureties on the bond for amounts aggregating the value of the identified goods. This was equivalent to a decree

that these creditors, to the extent of the identified goods, had rights in the stock of goods which were superior to the rights of all the other parties to the litigation. Up to this point there is no dispute as to the meaning of the decree or the propriety of its terms. The contest is over the balance of the fund which was realized on the execution issued against the principal and sureties on the bond, and therefore, in contemplation of law, the residue of the property after the identified goods had been withdrawn. The decree does not in terms say that the mortgagees had no lien upon the property or a lien inferior to the other creditors, and does not in terms deny to such mortgagees a remedy upon the bond. It does, however, provide that those creditors who had not recovered anything on account of identified goods, and who were simply unsecured creditors, were entitled to a judgment against the principal and sureties on the bond, and therefore, in effect, declares that they were interested in the property to the extent of these judgments. While, as has been said, the decree does not in terms declare that these unsecured creditors have rights superior to the mortgagees, still, construing it as a whole, this conclusion is inevitable. The bill of sale to Mrs. Herz was by the decree declared void, it being recited in this connection that the debts due by mortgage were assumed by Mrs. Herz when she took the bill of sale, from which it might be inferred that the mortgages should share the same fate. That such was the case is evident when it is noted that the decree in terms provides that the unsecured creditors shall have judgments against the sureties on the bond, that the only amounts decreed against the principal and sureties on the bond are those in favor of the plaintiffs, that no amounts are decreed in favor of the mortgagees, and that the amounts decreed against the principal and sureties are apparently in full satisfaction of all liability on the bond. From all this but one conclusion can be reached, and that is, that it was the intention of the judge to so frame the decree that it would be manifest that the unsecured creditors were to be protected to the extent of the bond, thus, in effect, deciding that the mortgagees had no rights which they could assert against the property or the bond which stood in its place. This being

true, the fund should have. been awarded to the creditors in whose favor the decree was rendered, and not to the mortgagees, who, if they ever had any interest in the property, have lost the same by the rendition of the decree which to-day stands unreversed. If this decree was erroneous, it is now too late to attack it. The rights of the parties to this litigation must stand or fall by the record as made.

*Judgment reversed. All the Justices concurring.*