MENDENHALL *v.* STOVALL *et al.*

No. 14451. MARCH 10, 1943.

*John H. Hudson,* for plaintiff in error.

*A. E. Wilson* and *W. L. Bryan,* contra.

REID, Chief Justice. The exceptions in this case are to a judgment entered on November 17, 1942, against the defendant Mendenhall for the sum of $325. It represented a reimbursement of attorneys' fees expended by the South Side Atlanta Bank, which had intervened in the cause pending between two partners. The case has twice been to this court upon other issues. *Mendenhall* v. *Stovall,* 191 *Ga.* 452 (12 S. E. 2d, 589) ; *Stovall* v. *Mendenhall,* 192 *Ga.* 796 (16 S. E. 2d, 546). A detailed history of the litigation may be found in the report of those cases, and only so much of it will be mentioned as is necessary to a consideration of the one issue at hand. Its last appearance here in the report of the

case cited above was upon a bill of exceptions to the final decree entered in the cause on May 21, 1941. At the time the litigation began the South Side Atlanta Bank was the holder of certain notes aggregating the principal sum of $1667, which had been signed by Mendenhall, the defendant, but which it was claimed represented obligations incurred for the benefit of the partnership. Pledged to secure the payment of these notes were certain open accounts payable to the partnership. On September 7, 1940, the holder of these notes filed its intervention in the cause, setting up the existence of such indebtedness, and asking for its payment. Subsequently two amendments were filed to the intervention. The plaintiff in the case contended that these open accounts were not lawfully transferred to the bank, since they were pledged to secure the individual indebtedness of the defendant whose contractual duty, it was contended, was to furnish from his own resources or credit the necessary financing for the partnership business. In the course of the litigation the defendant was required to deposit certain funds of the partnership into the registry of the court, and also to give a surety bond for the protection of the plaintiff and to abide the judgment of the court in respect to partnership funds which were later allowed to be withdrawn by the defendant. An auditor was appointed, and his findings with reference to the claim of the intervenor, which were later approved by the court, were to the general effect that while the intervenor did not have legal title to the accounts pledged as collateral, nevertheless the bank had extended credit in good faith and was entitled to have its indebtedness paid out of funds of the partnership coming under the equitable administration. The notes which the intervening bank held contained the usual provision in respect to the liability of the maker for attorneys' fees in case there should be a default and collection by law should be necessary. On May 21, 1941, the final decree mentioned above, and which was reviewed in 192 *Ga.* 796, recited that the notes of the intervening bank, principal and interest, had been paid in full. This decree taxed the costs of the proceeding against the plaintiff, and recited that the costs incurred had already been paid out of funds in court. After finally adjudicating the rights of the parties, it further recited that "jurisdiction is retained for the purpose of any purely administrative order." This decree was affirmed by decision of this court entered on Sep-

tember 9, 1941. On November 15, 1941, the following order was entered: "This case having been concluded by a judgment of the Supreme Court, affirming the final decree rendered therein, and it being made to appear to the court that the defendant, C. M. Mendenhall, has complied with all the provisions of the final decree with reference to the payments from the funds previously deposited in the clerk's office, and the judgment having been in favor of the defendant, the defendant, C. M. Mendenhall, and his surety, the Aetna Casualty & Surety Company, are hereby exonerated and discharged on the two bonds filed in this case under order of the court." On October 20, 1942, South Side Atlanta Bank, through its counsel, filed a motion in the superior court, styling it in the same case, setting up that in prosecuting its rights in respect to the notes held by it, and in securing their payment by means of the intervention referred to, the intervenor had incurred as an expense attorneys' fees in the sum of $433.51, "which should be refunded to it by the pledgor, C. M. Mendenhall." The defendant, in answer to a rule nisi issued upon this motion, objected to the allowance against him of any sum in reimbursement to intervenor. The judge (apparently upon a review of the record in the case, since no evidence was introduced) entered a judgment in favor of the intervening bank and against the defendant Mendenhall for the sum of $325.

1. Where equity has acquired jurisdiction for any purpose, it will retain jurisdiction to give full and complete relief, whether legal or equitable, as to all purposes relating to the subject-matter. *Mays* v. *Taylor,* 7 *Ga.* 238; *Walker* v. *Morris,* 14 *Ga.* 323 (3); *McDonald* v. *Davis,* 43 *Ga.* 356 (2); *Kidd* v. *Finch,* 188 *Ga.* 492, 496 (4 S. E. 2d, 187); *McCord* v. *Walton,* 192 *Ga.* 279 (3) (14 S. E. 2d, 723). And in proper cases of receivership where funds are being administered for the benefit of parties, as well as creditors who may intervene, equity has power to assess as a part of the costs and expenses of administration attorneys' fees. *Price* v. *Cutts,* 29 *Ga.* 142 (3) (74 Am. D. 52); *Greyling Realty Corporation* v. *Lawson,* 179 *Ga.* 188 (175 S. E. 453); *Keating* v. *Fuller,* 151 *Ga.* 66 (105 S. E. 844). It will be observed that it is not upon the latter principle that the intervenor relies, since it is not contended that the bank or its counsel added anything to the common fund for distribution or aided the general administration for

creditors or other parties. The theory relied upon is that the bank was entitled to reimbursement for expenses incurred in the "protection of its collateral." See 40 A. L. R. 259; 49 C. J. 945, § 91.

It is also observed in the present case that the object of the intervenor in seeking reimbursement was not to reopen or review the final decree in which costs were assessed and in which the rights of the intervenor as a creditor were adjudicated. The intervenor had presented to the court its notes evidencing the indebtedness and its collateral. The decree itself recites the payment of the claim which included principal and interest. The record does not show whether all the notes were in default. No claim was made for attorneys' fees at the time the principal and interest of the indebtedness was claimed, although the whole amount of such fees had already been incurred, unless some portion was due for services in connection with the bill of exceptions brought to this court where the final decree was affirmed. The decree purported to be final in all respects. Having recited the payment in full of intervenor's indebtedness, it hardly seems that any further action in reference to its claims or indebtedness was in contemplation of the court. Intervenor relies upon the recital in the decree to the effect that "jurisdiction is retained for the purpose of any purely administrative order," but we do not consider that this recital detracts in any respect from the finality of the decree in so far as the rights of the intervening bank are concerned. It will be noted that after this decree was affirmed by this court a further order was entered in the case, exonerating and discharging the defendant and his surety on the bond which had been filed in the case and which in effect had taken the place of the res which otherwise would have been in the custody of the court. This same order recites full compliance on the part of the defendant with the terms of the final decree, and was entered after the recital that jurisdiction was retained for "any purely administrative order." In *Clements* v. *Empire Lumber Co.*, 96 *Ga.* 319 (22 S. E. 987), it was held: "In such case it was within the power of the court to render a final decree fixing and allowing the compensation of the receiver, counsel fees, and other charges and expenses of administration; every party to the entire case was bound to take notice of this action of the court; and it was too late, at any term subsequent to that at which such action was taken, to except thereto or move to

set it aside for mere error." It is true that holding had reference to an effort to open up for review a decree entered at a previous term, to which no exception had been taken, rather than, as in the present case, an effort to secure relief supplemental to that granted in the decree; but the principles there stated and discussed seem analogous and equally applicable to a case such as this, where, more than eleven months and several terms of court after final judgment fixing the rights of the parties had been affirmed by this court and the defendant had been discharged, the intervenor sought to enlarge upon its recovery which had been previously adjudicated. In the case just cited it was said: "There were, however, in the main case, various other matters of which it was the duty of the judge to dispose, as to which he had the power to render a final decree, and in which every party to the entire case was necessarily interested. The matters now referred to are those relating to fixing and allowing compensation to the receiver, counsel fees, and other charges and expenses of administration. All the parties must have known that as to these things it would be incumbent upon the court to take appropriate action before the final disposition of the case; and they were therefore bound to take notice of what the court did with reference to the same, and present their objections to any action thereon which they conceived to be unlawful or detrimental to their rights in the premises. This being so, it was too late, at any term subsequent to that at which such action was taken by the court, to except thereto or to move to set it aside for mere error. . . The present case affords an illustration both of the rule and of the exception. McArthur had his day in court as to the allowance of the claims referred to in the second headnote, because he was bound to take notice. till the end of the case as to what was done in these matters; and as he let the term pass at which the action of which he complains as erroneous was taken, he could not except thereto at a subsequent term."

"There must, of course, be some point or stage in every court procedure, legal or equitable, when the particular cause is finally disposed of, its thread cut, and the parties are out of court, to be brought in again only by some new process duly served on them." 30 C. J. S. 1028, § 625. See also 19 Am. Jur. 288, § 419. "A supplemental decree is one made after final decree in respect of the execution of the decree, or to adjust all the matters incidental to

the litigation. Such decrees when made in the identical suit can not, however, create any other or different liabilities than those imposed by the original decree." 30 C. J. S. 977, § 586.

"A decree in equity is conclusive upon the parties to the case on all questions raised, or which could have been raised, relating to the property to be affected by the decree." *Claflin Co.* v. *De-Vaughn*, 106 *Ga.* 282 (32 S. E. 108). The last foregoing statement was made in a case where, as in the present case, a bond had been substituted for the property or funds for the benefit of the various parties who asserted an interest or to which they made claim. A decree had been entered which fixed the interest of certain parties, and, while not excluding in terms the participation of others, nevertheless made no allowance in their behalf; but it was held from the nature of the adjudication that they were excluded. Without regard to what the rights of the intervenor may have been with respect to expenses incurred in the protection of its collateral before the entry of the final decree, under the facts in the case before us we hold that its intervention for this purpose came too late, and that the court was without jurisdiction to further adjudicate upon the rights of the intervenor.

In reaching this conclusion we have considered the case of *Pine Mountain Mica & Asbestos Co.* v. *Carver*, 134 *Ga.* 5 (67 S. E. 428), where the court allowed compensation to certain caretakers, who had aided in the preservation and keeping in custody of the property which was under the jurisdiction and administration of the court, after final judgment as between the parties had been entered; the judgment being entered by consent. That case is distinguished from the one now under consideration, if not upon other grounds, for the reason that in that case the compensation allowed was a part of the actual cost which normally should be assessed for the benefit of any agent of the court in discharging such duties. In such a case it is the duty of the court to provide such compensation; and if, as apparently done in that case, it was inadvertently omitted in entering up the consent decree, a very different situation is presented. In the case now before us the rights of the intervenor in respect to allowance of attorneys' fees grew out of its promissory notes and the collateral securing same, and this very indebtedness had already been the subject-matter of final adjudication. *Judgment reversed. All the Justices concur.*