Gollothum Walker & Samuel F. Bradford *vs.* James Morris.

No. 47.—GOLLOTHUM WALKER & SAMUEL F. BRADFORD, plaintiffs in error *vs.* JAMES MORRIS, defendant.

[1.] The judgment of a Court, of competent jurisdiction, cannot be collaterally attacked, on account of any error, or want of regularity in its exercise.

[2.] When a Court of Equity acquires jurisdiction for one purpose, it will retain it until full and satisfactory justice is rendered to all the parties concerned.

[3.] Where a Court of Equity has obtained jurisdiction over the person of an administrator, as well as the estate in his hands, who is removed from office, a receiver may be appointed, to dispose of the assets, under the decree of the Court, in order to effect the object for which the Court originally interfered.

[4.] The jurisdiction of our Superior Courts, sitting as Courts of Chancery, upon the administration of estates, considered.

[5.] In the main, Equity Jurisprudence embraces the same matters of jurisdiction, and modes of remedy here, as in England.

Ejectment, in Whitfield Superior Court.    Tried before Judge JOHN H. LUMPKIN, April Term, 1853.

The facts of this case are as follows:

Joseph Collins was the drawer of a lot of land, in the County of Whitfield, which he sold to Thomas Glascock, late of Richmond county.   Glascock died, and, in 1841, Andrew McLean was appointed his administrator.   Glascock had been the administrator on the estate of one Priscilla Jones; and at the time of his death, had funds of said estate in his hands,

amounting to about 3000 or 4000 dollars.   Sundry *fi. fas.* were also in existence against him, which, after his death, were levied on his property, and some of his property sold at Sheriff's sale.

The heirs of Mrs. Jones gave notice to the Sheriff, that they claimed a lien on the money ; and filed their bill in Richmond Superior Court, against the administrator and creditors, to have their claim first satisfied out of Glascock's estate.   On this bill a decree was had, settling the claims of the creditors, removing the administrator, and appointing William W. Holt, and afterwards John Milledge, a receiver, to wind up the estate, and pay it out in accordance with the decree.

An order of the Court was subsequently passed, purporting to be by consent of the parties in interest, authorizing the receiver, on a certain day, in the City of Augusta, to sell to the highest bidder, the real estate of said Glascock.

By virtue of which order, and in pursuance thereof, the receiver did sell the said lot in Whitfield county, to Walker & Bradford, the plaintiffs in error.

They brought their action against James Morris, the tenant in possession, for recovery of the land, and mesne profits.

On the trial, the plaintiffs produced a chain of title from the State to said Glascock ; and offered a deed from John Milledge, receiver of the estate of Glascock, executed to the plaintiffs as the highest bidders, at the sale of the land in the City of Augusta, under said order in Chancery.   The deed recited all the preliminary proceedings, and was supported by an exemplification of the record of the Superior Court of Richmond county, touching the bill of the heirs of Mrs. Jones, and the proceedings had thereon, which was offered at the same time with the deed.

Objection being made, the Court decided that the sale to plaintiffs was void and illegal, and rejected the receiver's deed.

To which decision, plaintiffs excepted.

WALKER, for plaintiffs in error.

Gollothum Walker & Samuel F. Bradford *vs.* James Morris.

AKIN & UNDERWOOD, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] There can be but one possible objection to the validity of the deed, made to the plaintiffs under the judicial sale in Richmond county, and that is a want of jurisdiction in the Court ordering the proceeding. Concede the jurisdiction, and no error or irregularity in the mode of its exercise, can effect the purchaser's title, or justify the attack made upon it in this collateral manner.

[2.] Apart from the sanction given to the proceeding by all the parties in interest, which fact appears upon the face of the record, can there be any doubt, but that the Superior Court of Richmond, sitting as a Court of Chancery, had the right to direct the sale of the real estate of Thomas Glascock, of which the lot in dispute was a part? Its power was necessarily invoked, to protect the higher lien of the debt due the heirs of Priscilla Jones. Without its timely interposition, not only the money in the hands of the Sheriff, but the assets of the estate in the hands of McLean, the administrator, would have been appropriated to claims of inferior dignity. Having acquired jurisdiction for this purpose, it was not only the right of the Court, but its imperative duty, to retain it until the object for which it interfered, namely, the protection of this first-class demand, was satisfied. And this could only be done, by making sale of the residue of the decedent's property.

[3.] And as this could not be accomplished through the legal representative, he having been removed from office, it was effected through a receiver, appointed by the Court, and amenable to it, for a proper discharge of the trust confided to him. And so far from there being anything extraordinary in this procedure, it is the usual course pursued by Courts of Equity in such cases.

[4.] The jurisdiction of Courts of Equity, to superintend the administration of assets, and decree a distribution of the residue among the parties entitled, after the payment of all the

debts and charges, was supposed, at one time, to depend wholly and solely upon the mere fact, that there exists a constructive trust of the funds, in the hands of the personal representative, requiring the assets to be properly applied and distributed. But it is now conceded, that there are other and numerous sources of jurisdiction, collaterally connected with this, such as the necessity of discovery, and taking accounts, existing frequently in very complicated forms, all of which are, or may be necessary to be examined, in order to a full and due administration of the estate. (1 *Story's Eq. Jur.* § 578.)

Indeed, the usual resort, both here and in England, has been, for a great length of time, to the Court of Chancery, to settle the administration of estates; so that, practically speaking, in cases of any complication or differently, it has acquired almost an *exclusive jurisdiction.* (*Ibid,* § 543.)

I would respectfully ask, in the case before us, if it were possible for any other Court to have administered full and satisfactory justice in the premises? How else could the prior lien of the trust debt, owing to the distributees of Mrs. Jones, have been protected? If an administration can be wrested from the hands of the legal representative, who is wasting and mismanaging the estate, and placed in the hands of a receiver—a proposition which none will dispute—much more will the assets be thus disposed of, for the benefit of all concerned, when the personal representative has been removed; and that, too, after the Court has obtained jurisdiction, not only over his person, but the property in his possession, by reason of the pending litigation.

[5.] What is the extent of Equity Jurisdiction in this State, seems not to have been very well understood, or accurately defined. Some consider that no general Equity powers exist here; but that a few specified heads of Equity Jurisprudence only, are confided to the ordinary Courts of Law, constituting a limited Statutory Jurisdiction. And this inference is derived mainly from the fact, that its powers are exercised concurrently with the Common Law Jurisdiction, by the same tribunal being at once a Court of Law and a Court of Equity,

somewhat similar to the Court of Exchequer in England.    But I apprehend, that in the main, Equity Jurisprudence generally embraces the same matters of jurisdiction and modes of remedy, as exist in England.

Could there be a doubt entertained, but that the proceeding in Richmond county, under which the plaintiff deduces title to the land in dispute, would be sustained there ?    Would it be seriously insisted, that the Court of Equity had wrongfully assumed jurisdiction, which legitimately belonged to the Ecclesiastical Courts, and to none other ?    We think not.

Judgment reversed.