CUNNINGHAM *et al. vs.* SCHLEY *et al.*

| 68 | 105 |
| 119 | 900 |

1. A *retraxit* is the open, public and voluntary renunciation by the plaintiff in open court of his suit or cause of action, and if this is done by the plaintiff and a judgment entered thereon by the defendant, the plaintiff's right of action is forever gone.

2. When a party to a contract seeks to enforce the same by bill for specific performance, and obtains a decree thereon, the contract is merged into the decree. Such contract and the decree founded upon it will not be set aside at the instance of the party who took it, on the ground that the defendants refuse to fully comply with it, and that on account of insolvency they cannot be compelled by execution to do so, as provided in the decree. Especially will such decree stand in the absence of any allegation of fraud, accident or mistake, or that insolvency had occurred since it was rendered.

(*a*) A consent decree is not the subject of a bill of review.

*Retraxit.* Equity. Contracts. Judgments. Before Judge SNEAD. Richmond Superior Court. October Term, 1880.

Reported in the decision.

FOSTER & LAMAR; J. C. C. BLACK, for plaintiffs in error.

W. W. MONTGOMERY, for defendants.

SPEER, Justice

Defendants in error filed their bill in the court below in 1879, alleging that they were the children of George Schley, deceased, who died testate in 1866, reciting in his will that he owed a certain sum to his children under a marriage settlement by the terms of which the property therein conveyed was settled upon his wife, the mother of said defendants in error, for life, with remainder to her children. Said settlement was recorded in Jefferson county, but the records were destroyed and the original lost.

The original property covered by said settlement was

sold by their father, and other property subsequently bought by him, including a plantation of three hundred and twenty-five acres, immediately east of and adjoining the city of Augusta, known as Eldorado, the title to which he took in his individual name.

As soon after their father's death as the law permitted, the defendants in error filed their bill against his executors for the purpose of tracing their trust funds into property purchased by their father in his individual name.

About the time the Schley children filed their bill aforesaid, the Cunningham children, plaintiffs in error, also filed their bill against the executors of George Schley to recover a large balance claimed to be due them by said George Schley as their guardian.

Both of these cases were consolidated by consent and tried as one before Judge Andrews, who on —— day of ———— 187—, rendered a decree giving Eldorado to the Schley children, and holding the balance of the estate to be the individual property of the said George Schley, and subject to the payment of some $200,000.00, found by said decree to be due the Cunningham children by George Schley as their guardian. Said decree was afterwards affirmed by the supreme court. See 41 *Ga.*, 426.

Pending said litigation Robt. and Wm. Schley, executors of George Schley, resigned their trust, and C. A. Rowland was appointed administrator *de bonis non*, and made a party in said consolidated case. Soon after the affirmance by the supreme court of the decree above mentioned, the Schley children demanded of said administrator the possession of Eldorado. In the meantime a general creditor of George Schley had obtained a judgment against his estate and levied the *fi. fa.* on Eldorado, and for this reason said administrator refused to comply with said demand, and filed a bill of interpleader against the Schley children and general creditors of the estate, which was insolvent, and said Cunningham children, calling upon them to interplead and settle the priority of their claims

as to Eldorado, said Cunninghams had the bill dismissed as to them.

The case under said bill of interpleader was referred to a referee to decide whether Eldorado was assets in the hands of the administrator to pay general creditors or the property of the Schley children. The referee reported the property was assets in hands of administrator to pay debts due general creditors, to which report the Schley children filed exceptions. Pending these exceptions, the Schley and Cunningham children entered into a written agreement, whereby the Schley children engaged to surrender for the benefit of the Cunningham children, in such form as the latter might select, all their claims against Eldorado which they had by the aforesaid decree rendered by Judge Andrews. In consideration of which, the Cunningham children agreed that, if it should be decided they were entitled to the proceeds of Eldorado under their judgment against the estate they, the Cunningham children, would cause to be paid to the Schley children, out of the proceeds of said place, the sum of $2,500.00 with interest from date, and would also cause to be paid to said Schley children the sum of ten per cent. on the net proceeds of a cotton claim of said Schley's estate against the United States, if said claim should be recovered, and it be held the Cunningham children were entitled to the same on their judgment.

The Cunningham children selected, as the mode by which said surrender should be made, an order on the minutes of the court, setting aside the decree of Judge Andrews giving the Schley children Eldorado and a *retraxit* entered by the Schley children on the minutes of the court, both of which were done.

At same time said entry was made and entered on the minutes, the Cunningham children were reinstated as parties to said bill of interpleader, and at the following term entered a judgment *nunc pro tunc* on said *retraxit*, declar-

v 68—8

ing Eldorado to be assets in the hands of the administrator *de bonis* of George Schley for payment of debts according to their priority, and that the Cunningham children will be first paid in full over all other claims.

This decree was rendered in 1875. Rowland resigned as administrator, and R. E Cunningham was appointed. Prior to Rowland's resignation, R. E. Cunningham had rented Eldorado from Rowland for several years, and had given his notes for the same, to the amount of more than $9,000.00, which were unpaid. Rowland turned over to Cunningham, as administrator, all the unadministered assets in his hands. Executions were issued in favor of the Cunningham children upon the judgments against the estate of George Schley, and were placed in the hands of their counsel, W. W. Montgomery, Esq. He ordered them levied upon the Eldorado property, for the purpose of collecting fees he claimed due him by the Cunningham children.

They filed a bill to restrain the levy, complaining that Montgomery had grossly mismanaged their case, and especially, of the compromise above referred to.

The Cunningham children having failed to comply with their agreement, the Schley children filed their bill against Rowland, administrator, and against the Cunninghams, to compel compliance with said agreement, pending which R. E. Cunningham became administrator in place of Rowland, as above stated, and in his answer stated that Montgomery had recorded an attorney's lien on Eldorado, and it would be inequitable to force a sale of Eldorado under the circumstances. He admitted having received, on the cotton claim against the government referred to in the contract, the sum of $8,351.42.

A decree on this bill was taken by agreement, that the Schley children should recover of the Cunningham children $835.00, less five per cent., with interest since August, 1876, to be paid at once; also that the Schley

children should recover of the Cunningham children $2,500.00, with interest, to be paid out of the proceeds of Eldorado. That the sale of said place should be made as soon as possible after the final decision between the Cunningham children and Montgomery was had. And if said sale was not made in sixty days after said decision, then the complainants should have execution against the Cunningham children individually, and R. E. Cunningham administrator of George Schley, for the amounts.

A final decision was made in the case between the Cunningham children and said Montgomery at the April term, 1878, and though nearly twelve months have elapsed, the Cunningham children have taken no steps to have Eldorado sold; nor have they paid complainants any part of the $2,500.00 decreed to them.

They allege that to issue execution on their judgment against the Cunningham children would be unavailable since they have no property to levy on, and especially is this true of R. E. Cunningham, who is chiefly at fault for the non-compliance with the terms of said decree, and the Schley estate is entirely insolvent, and their claim cannot be considered a debt against the estate. The Cunningham children, not only fail to sell Eldorado under their *fi. fas* recorded against the Schley estate, and which could be made available for that purpose, but on the contrary, R. E. Cunningham is retaining the use of the same for the defendants, and is not attempting to administer it in any way. R. E. Cunningham could have easily carried out the consent decree aforesaid. Since the same was rendered, he has received for the estate a large amount of money on the cotton claim due the estate from the United States, of which sum the Schley children have only received the percentage on the cotton claim, as provided in the contract. It is further alleged, that while Rowland, as adminis-

trator, had charge of the Schley estate, he received $3,500.00 for the right-of-way for the Port Royal railroad, which he also paid to R. E. Cunningham as administrator.

The Schley children, upon the foregoing statement of facts, filed their bill against the Cunningham children for the rescission of said contract, and for the vacating of all decrees assented to by them under said contract, and since the same was entered into whereby Eldorado was declared to be assets in the hands of the administrator of Schley's estate for the payment of his debts, and for vacating and setting aside the order modifying and altering the decree of Judge Andrews before referred to, and the *retraxit* of judgment *nunc pro tunc* entered thereon, and that all parties may stand as they were at the time said contract was entered into, and that the decision of the supreme court affirming the judgment of Judge Andrews be of full force and effect as originally rendered, the complainants offering to account for the sum admitted to have been paid them as the per cent. on the cotton claim. That Eldorado be decreed to be their property under the decree aforesaid, and an accounting be had of the rents, issues and profits of Eldorado since the same was turned over by Rowland as administrator, and the rent notes given by R. E. Cunningham. That they may, by decree, be placed in possession of said place, and that R. E. Cunningham be enjoined from any attempt, as the administrator of Schley's estate, to sell Eldorado, and all the Cunningham children be enjoined from levying any execution they hold against the Schley estate upon said Eldorado, and that a receiver be appointed to take possession of said place and manage it.

To this bill the Cunningham children demurred on the grounds following, to-wit:

(1.) There is no equity in said bill.

(2.) Complainants have an adequate remedy at law.

(3.) Said bill is multifarious.

The demurrer was overruled and defendants excepted.

The complainants below are seeking by their bill to rescind a contract which, on their application, has been decreed to be specifically performed, and which decree was rendered by consent of both parties to the contract without any allegation of fraud, accident or mistake, entering into or inducing said contract or the decree for specific performance thereon. Not only does complainants' bill seek the rescission of the contract and the cancellation of the consent decree thereon, on the sole ground that the Cunninghams have failed and refused to comply with the terms of said contract and decree, and still fail and refuse so to do, but they further seek to vacate all decrees assented to by complainants under said contract since the same was entered into, whereby "said Eldorado was declared to be assets in the hands of the administrator of George Schley for the payment of his debts," as well as for the vacating and setting aside the order modifying the decree of Judge Andrews hereinbefore referred to, and the *retraxit* of complainants and the judgment *nunc pro tunc* thereon entered, and that the said plantation, called Eldorado, may be decreed to the property of complainants, etc.

1. The object of the bill seems to be to place complainants in the position they were at the time the decree was rendered by Judge Andrews. One serious obstacle to the relief sought by complainants' bill is the renunciation by means of the *retraxit* which complainants filed since the decree in their favor rendered by Judge Andrews in which *retraxit* they, by their written agreement, stipulated "to surrender for the benefit of the Cunningham children all their claims against Eldorado, which they had by the aforesaid decree rendered by Judge Andrews." A *retraxit* is the open, public and voluntary renunciation by the plaintiff in open court of his suit or cause of action, and if this is done by the plaintiff and a judgment

entered thereon by the defendant, the plaintiff's right of action is forever gone.   Code, §§3445, 3446; 6 *Ga.*, 432; 1 Ala., 45.

2. But is this bill maintainable under the allegations therein contained?   Admitting that the *retraxit* made with judgment entered thereon does not bar complainants from seeking the decree of cancellation, still could a decree be set aside under the allegations therein contained?

The judgment of a court of competent jurisdiction may be set aside by a decree in chancery for fraud, accident or mistake, or the acts of the adverse party unmixed with the negligence or fault of the complainant.   Code, §3595.

In this bill there is no allegation of fraud, accident or mistake, by reason of which the contracts, ought to be set aside, was induced.   Nor is there any allegation charging that the judgments or decrees, and orders, *retraxit*, etc., were procured by any fraudulent means on the part of defendants' below, or by reason of any accident or mistake entering therein.   The only complaint made or reason given is, that the Cunninghams are insolvent, and failed or refused to comply with the terms of the decree. It is not alleged that this insolvency has occurred since the decree, and we cannot see any good reason why the mere inability of a party to perform a decree on the score of insolvency would be a good reason either to vacate or set aside.

The defendants below have partially satisfied the decree sought to be set aside ; and, as under its provisions, on failure further to comply by the paying of the $2,500.00, complainants have a right to enforce the payment thereof by execution against the defendants as well as the property of the estate, until all their remedies under their decree fail, it would be premature for a court of equity to interfere by such a bill as is herein filed.

The authorities relied upon by counsel for the defend-

ants in error, are applicable so far as we have been able to examine them, to the rescission and cancellation of *contracts.*

No case has been cited where a contract, the specific performance of which has been decreed, is made the subject of rescission or cancellation on the part of the plaintiff in the decree.

If he sets up a contract, and asks the aid of a court to have it specifically performed, a decree thereon ratifies and confirms the contract, and he will be estopped from seeking either to vacate or to rescind it.

One who seeks and obtains a judgment of a court in his own favor, and upon a case made upon his own pleadings, will not be heard either to vacate it or set it aside, unless at least the same was rendered through fraud, accident or mistake, unmixed with negligence on his part.

This principle was recognized by this court in the case of *Branch & Smith vs. Carswell, trustee,* decided at the September term, 1880, of this court. If, instead of seeking a court of equity to enforce by its decree the contract now complained of, the complainants below had sought its aid to vacate and set aside said contract upon a proper case made, they could have had the relief sought. But their election was to *enforce* the contract, and not to set it aside, and for this purpose they sought and obtained a decree of the court.

Our view is that such a contract becomes merged in the decree rendered upon their bill. Complainants have voluntarily and advisedly acted on their election in this matter, in the hope that it might turn out to their advantage; if they have not reaped its full fruits it is their misfortune, if not their fault ; the decree, at least, is conclusive upon both parties. *62 Ga.,* 604. Code, §§3750, 3577, 2897; 40 *Ga.,* 199 ; 17 *Ib.,* 110.

The difficulties in the way of complainants are moreover increased by the fact that the decree sought to be vacated was rendered with the *consent* of both parties.

Such a decree is not the subject of a bill of review, as was held by this court in 7 *Ga.*, 110, and authorities cited. Under all the charges and allegations as set forth in complainants' bill, in the entire absence of any charge of fraud, accident or mistake, on the part of defendants to induce complainants to enter into said contract, and in view of the fact that complainants have sought and obtained a consent decree *specifically enforcing* said contract, and have taken a benefit thereunder, we hold that they are bound, not only by the contract, but also by the decree they have sought for the enforcement of the same.

We think, therefore, that the court erred in not sustaining the demurrer to complainants' bill.

Let the judgment of the court below be reversed.

JACKSON, Chief Justice, concurred upon the ground that there was no allegation that the consent to the decree sought to be set aside was obtained by fraud, accident or mistake. Whilst thus concurring he does not wish to be understood as dissenting from any thing said by Justice Speer, but simply to indicate the ground of his concurrence.