### LATIMER *v.* IRISH–AMERICAN BANK *et al.*

1. The first term of an equity case is the trial term, when all the parties consent. It follows that when such consent is given, the parties have the same rights and liabilities at the first term that they would have in the trial of the case at the second or any subsequent term.
(*a*) A judgment of a court of competent jurisdiction is conclusive between the same parties and their privies as to all matters put in issue or which, under the rules of law, might have been put in issue in the cause wherein the judgment was rendered.
(*b*) The exception to the foregoing rule, in cases in which the party had a good defense of which he was entirely ignorant, or was prevented from availing himself of his defense by fraud, or accident, or the act of the adverse party, is unavailing unless these grounds of relief are unmixed with negligence or fault on his part.
(*c*) Objections to the pleadings on both sides are required to be made at the first term.
2. A defendant in every case may set up in his answer any matter which, under the English rule, should be the subject of a cross-bill.
(*a*) Where the petitioner in an equitable proceeding for a partition seeks to charge her severed interest with her debts to the defendants, their answer praying a judgment for their debts is germane to the petition.
(*b*) Equity does nothing by halves, but gives complete relief.

3. Although the debts on which the decree was rendered in the equitable partition proceeding were not quite due, the decree will not be reopened on that ground alone, it appearing that the plaintiff in that proceeding set out these debts in her petition for partition, without any reference to their not being due; that she made no objection at the hearing of the case on that account; and that the notes evidencing her indebtedness matured before the bill of review was filed, and before any effort was made to enforce the decree as to these debts.

4. The pleadings in the partition case were sufficient to authorize the decree rendered.

5. It was not necessary to the validity of the decree that the answers of the defendants should have been marked filed by the clerk, the answers having in fact been in the hands of the court, and having been considered in making the decree.

6. While inadvertent errors in a decree may be corrected, the general rule is that a bill of review will not lie against a consent decree.

7. There is no specification of any fraud in the procurement of the decree.

Argued March 16, — Decided March 30, 1904.

Equitable petition.    Before Judge Gary.    Richmond superior court.    February 16, 1903.

*E. H. Callaway,* for plaintiff.    *J. C. C. Black, W. K. Miller, D. G. Fogarty,* and *W. H. Barrett,* for defendants.

TURNER, J.    This case comes to this court upon a writ of error sued out by Annie K. Latimer, the plaintiff in the court below, who thus brings under review the judgment of that court dismissing an equitable proceeding instituted by her against the Irish-American Bank and certain other parties defendant.    The nature of this proceeding, as well as the allegations upon which she relied for the relief sought, may readily be gathered from the following statement of the case, set forth in the brief submitted by her counsel:    " Plaintiff in error brought an equitable petition against defendants in error, for the purpose of setting aside certain judgments rendered against her in a decree in a partition proceeding in Richmond superior court on October 22, 1901. . . Her petition and the exhibits thereto set forth the following facts:

" In September, 1901, plaintiff owned a 1–5 undivided interest in the estate of her father, which also covered the trust estate left by her mother.    The remaining 4–5 interest in said estates were owned by her brother, W. C. Pollard, and her three sisters, Mrs. Brantley, Mrs. Stuart, and Mrs. Giles.    Her brother W. C. Pollard, her husband W. E. Latimer, and her brother-in-law H. R. Stuart were the administrators upon her father's estate.    Latimer,

her husband, was heavily involved, owing a large indebtedness, among others, to the defendant banks, who were threatening criminal prosecution.    Under these circumstances, plaintiff, at the instance of her husband, her brother, and brother-in-law, during September, 1901, executed the following notes and conveyances, all to be used in paying off and securing her husband's indebtedness:    September 16, 1901, to Martin & Bush, $750, with conveyance of 1–5 undivided interest in father's and mother's estates, as security; September 17, 1901, note to Stuart for $800, and to Pollard for $400; September 26, 1901, conveyance to Pollard and Stuart of her 1–5 undivided interests in said estates, to secure said notes; September 27, 1901, to Pollard, two notes, one for $225, the other for $774.43; and on the same date executed a third conveyance to Pollard on her 1–5 undivided interest in said estates; all of said notes maturing 60 days after date.    Plaintiff received no money on any of said obligations, except the note to Martin & Bush.    The money received from them was delivered by her to her husband.    All the notes and conveyances executed by her to Pollard and Stuart were immediately transferred by them to Irish–American Bank and National Exchange Bank, to secure indebtedness due by Latimer, plaintiff's husband, to these banks, and to prevent his prosecution.

" On September 28, 1901, an application for partition was prepared by the attorney for the three administrators, and plaintiff with her sisters signed the same in person at the instance of said administrators.    This petition for partition recited the indebtedness represented by the notes which plaintiff had signed, and the conveyances, and contained a prayer that the indebtedness represented by said notes and the liens of the instruments securing the same should be made a charge against petitioner's separate, segregated interest in said estates, instead of upon the 1–5 undivided interest in the whole, and also contained a consent for a trial at the first term by the judge without a jury.    The two defendant banks and Martin & Bush were made parties on account of the change requested in the lien of their conveyances.    All the defendants acknowledged service, September 28, 1901.    There was a joint answer by Martin & Bush and the two banks, stating only the amount of their indebtedness, and that they held a lien; and praying for judgment.    But the character of indebtedness

was not stated, neither the dates nor the maturity were given, and no allegation that it was due; and the answer does not appear to have ever been filed. There was an answer by the three administrators, which, in the last paragraph, stated the amount of indebtedness which Pollard and Stuart claimed against plaintiff, without more. This answer is not marked filed. Plaintiff never saw or heard of either of these answers until the filing of her present suit. On October 22, 1901, the first day of the October term of the court, nearly a month before the maturity of any of said indebtedness, without any notice whatever to plaintiff, the attorney for the three administrators and the attorney for the two banks took a decree from the judge alone, without the intervention of a jury, partitioning the property, assigning to plaintiff 1–5 of the same, and entering up judgment against her in favor of Martin & Bush, and the two banks, and Pollard and Stuart, the two administrators, in principal sums aggregating $3,763.02, which was $813.59 more than the aggregate amount of the notes which she had executed in September. No further steps were taken in the matter, and no effort made to enforce this decree or the judgments rendered therein until January 30, 1902, after the adjournment of the October term of the court, when executions were issued, and plaintiff, for the first time, knew that said judgments had been entered, when she immediately filed the present petition to set the same aside. Upon the maturity of the notes in November, 1901, after the decree had been rendered, the banks holding these notes of plaintiff under transfer from Pollard and Stuart had the same protested."

The court sustained a general demurrer and motion to dismiss the plaintiff's petition, and she excepted. On the argument of the case before this court, counsel for the plaintiff in error contended that the judgments rendered against her in the trial court on the original petition for partition, etc., should be set aside for the following reasons, which are set forth in the brief filed in her behalf: " (1) Because the notes which she executed and the transfers of her property were obtained from her by her husband, brother, and brother-in-law, who are the administrators on her father's estate, and were transferred to the banks for the purpose of suppressing criminal prosecutions against her husband, and that all these facts were known to and participated in by the banks. (2) Because the

answer of Martin & Bush and the two banks and of the administrators, setting up indebtedness against plaintiff, were so meagre and defective that no legal or valid judgment could be rendered upon the same.　　(3) Because the petition filed, which was signed by plaintiff and her sisters, was a partition proceeding on its face, and contained nothing to indicate or suggest that judgments would be rendered therein in favor of the defendants, especially on notes not due, and the answers asking judgment were not germane to the same.　　(4) Because plaintiff had no notice, knowledge, or information of the existence of the pleadings in which judgments were asked for, and no reasonable grounds to suspect that such pleadings would be filed or judgments asked for on notes not due, until after the term at which the judgments were rendered had expired; and therefore she has never had her day in court so far as these judgments are concerned.　　(5) The judgments were rendered prematurely, on October 22, 1901, on notes which did not mature until November 15, 26, and 27, thereafter.　　(6) Plaintiff never consented for a trial at the first term by the judge, without a jury, of any issue except those expressly set forth in the petition for partition, which she signed.　　This consent did not cover the issues raised by the answers of the defendants, on which the judgments were rendered.　　(7) The pleadings were not sufficient to support the judgments, and the judgments aggregated in amount $813.59 in excess of all obligations signed by plaintiff."

In the original equitable petition filed by the plaintiff in error, with her sisters, for the partition of the landed estates of her father and mother, and for other purposes, it appears, among other things, that these lands were set out and described; that she claimed a one-fifth undivided interest, on which she had executed encumbrances in the nature of security deeds to secure various debts; that these debts were set out as to amounts of principal and interest, were evidenced by notes and conveyances, but the dates and maturity of these obligations were not set out in the petition.　　She also alleged that certain banking institutions, defendants in that proceeding, to which said debts and securities had been transferred, threatened to complicate the landed estates by selling the undivided interest of the said Annie K. Latimer therein, which it was averred would, if done, result in a sacrifice; that it would be to the interest of all the parties that the interest

of Annie K. Latimer should be severed from the rest; and that that interest, thus segregated, should be held liable for the indebtedness charged by her thereon, to which she expressly consented. The prayer of the petition, among other things, asked that her share be alone charged with the indebtedness above referred to, and that such other and further relief be granted as the nature and circumstances of the case might require, and to the court might seem meet. Process was also prayed against the defendants named in the proceeding, together with the creditors of Annie K. Latimer; and she added a consent and request that the case be heard and determined at the first term, to wit, the October term, 1901, by the judge alone, without the intervention of a jury. This petition was signed, in their proper persons, by Annie K. Latimer and her coplaintiffs; also by W. K. Miller, "Pet. Atty." To this petition for partition an answer was filed by the creditors of Annie K. Latimer, defendants in error, in which they admit all the allegations contained in the petition; set out their claims as to amount, but not as to maturity; state their liens upon the interest of Mrs. Latimer, and pray judgment against her for the sums stated, and that the judgments be enforced against her interest in the property, in the order and priority stated in the answer. At the appearance term of the case a decree was rendered by his honor Judge Brinson, reciting, in substance, that it appeared to the court that the plaintiffs were entitled to the partition prayed for, and further reciting that all parties were represented and consenting that the case be heard and decided at the first term of the court by the judge alone, without the intervention of a jury. The decree proceeded, fixing the various sums in which the plaintiff in error was indebted to her various creditors, whose liens she had asked to be transferred to her severed or segregated interest in the lands which she had inherited from her parents, for which said several sums judgments were rendered in the decree in favor of the creditors respectively, the same to be specially enforced against the share of Annie K. Latimer thereinafter described. In another portion of the decree, also, the part allotted in the partition to Mrs. Latimer was specially charged with the indebtedness in the said decree found to exist against her, and set out in the petition and answer. To the statement of the case made by the learned counsel for the plaintiff in error,

hereinbefore given, it should be added that in her new bill she prayed, that the notes and the deeds to secure them, given to the defendants in error, who were also defendants in the original bill, should be declared void and surrendered to her, and that the part of the lands set apart to her by the decree in the original bill be turned over to her, as her property under said partition, and that the decree rendered on the original bill be reviewed and reformed by declaring null and void the judgments rendered in favor of said defendants; that injunction issue to restrain defendants from enforcing the executions issued under said judgments, etc.

1. "The trial term for all causes for equitable relief shall be the second term after service has been perfected on all the parties. But parties to proceedings for equitable relief may, by consent, dispose of all equity causes at the first term, if service has been properly perfected." Civil Code, § 4848. The law, therefore, renders equity causes triable at the first term, in cases where the parties consent, as was done in this case. Any step which either party could take in the trial of the case could be taken, under these circumstances, at the first term. In other words, the statute and the consent of the parties advanced the trial, with all its incidents, from the second to the first term. It was therefore incumbent on the plaintiff, Annie K. Latimer, in the trial of the original case, to diligently attend it at the first term, by herself or counsel, and to meet every emergency which might grow out of the case. It is too late, after the trial, to complain that she has not been heard. "A judgment of a court of competent jurisdiction is conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered." Civil Code, § 3742. This principle is fundamental, and without it there would be no limit to litigation. Even a third party, "who had full knowledge of the pendency of a case in which he had a direct pecuniary interest, and neither sought to become a party thereto nor made any effort to intervene therein, so as to protect his rights, can not, after the rendition of a judgment in favor of the plaintiff in such suit, maintain an equitable petition to set such judgment aside." *Fitzgerald* v. *Bowen,* 114 *Ga.* 691. Having brought her creditors into court and prayed that their claims should, by the decree of the court, be charged

upon her separate share of the property partitioned, it would seem that the appropriate and proper time for Mrs. Latimer to attack these claims on any ground had then arrived. For these reasons, we think she is concluded by the decree rendered on the original bill. Whatever may be the fact as to her complaint that by these debts she assumed liabilities of her husband, and that the proceeds were used to compound a felony, she has passed the time when she could set up these matters in court, and can not go behind the decree rendered, unless it appears that the court transcended its powers in rendering the decree. *Glover* v. *Moore*, 60 *Ga.* 189; *Mashburn* v. *Gouge*, 61 *Ga.* 512; *Lewis* v. *Gunn*, 63 *Ga.* 542; *Jones* v. *Harrell*, 110 *Ga.* 373. This court has held many times that a judgment is final, unless it can be shown that the party complaining of it had "a good defense of which he was entirely ignorant, or unless he was prevented from availing himself of his defense by fraud, or accident, or the act of the adverse party, *unmixed with negligence or fault on his part*." (The italics are by Judge Nisbet.) *Bellamy* v. *Woodson*, 4 *Ga.* 181; *Bostwick* v. *Perkins*, 1 *Ga.* 136; *Stroup* v. *Sullivan*, 2 *Ga.* 279; *Kenan* v. *Miller*, Id. 329; *Mullins* v. *Christopher*, 36 *Ga.* 584; *Anderson* v. *Clark*, 70 *Ga.* 367; *Massey* v. *Ins. Co.*, Id. 794; *Barksdale* v. *Greene*, 29 *Ga.* 418; *Easley* v. *Camp*, 40 *Ga.* 698; *Wingfield* v. *Rhea*, 73 *Ga.* 477; *Williams* v. *Simmons*, 79 *Ga.* 655; *Brown* v. *Brown*, 99 *Ga.* 312; *Griffin* v. *Smyly*, 105 *Ga.* 475; *Berry* v. *Burghard*, 111 *Ga.* 117; *Payne* v. *Bowdrie*, 110 *Ga.* 556; *Donaldson* v. *Roberts*, 109 *Ga.* 832; *Owens* v. *VanWinkle Co.*, 96 *Ga.* 408; *Sisson* v. *Pittman*, 113 *Ga.* 166; and see also Civil Code, §§ 3984, 3988, 5370; 1 Black on Judg. § 330. In *Lewis* v. *Gunn*, 63 *Ga.* 542, this court held that a wife could consent to a judgment as part of a settlement of what she claimed was her husband's debt. For the foregoing array of authorities, as well as other authorities hereinafter cited, we are indebted to the able briefs of counsel for the defendants in error. The list of these authorities could be largely extended.

Furthermore, as to the matter of practice involved in this case, the code requires that "The judge at each regular term of the superior court shall call all cases on the appearance docket, and hear and decide all objections made to the sufficiency of petitions and pleas, and may by order dismiss plaintiff's petition, or strike

defendant's plea, for non-compliance with the requirements of law, unless the defect is cured by amendment." Civil Code, § 5045. Under the uniform procedure act, this section applies as well to equitable petitions as to other cases. It is also provided in the code that "Pleas and answers may be demurred to, and if new matter is set up by the defendant not controverting the plaintiff's petition, the plaintiff, in proper cases, may be required by the court to meet the same by appropriate written pleadings." Civil Code, § 5050; *Ward* v. *Frick Co.*, 95 *Ga.* 804. The plaintiff, having failed to take advantage of these statutory remedies, seems to have had her day in court on these questions.

2. But it is insisted that the answers of the defendants to the original bill set up matters not germane, and that the judgments rendered by the court on that bill in favor of the defendants were not authorized by the pleadings. In considering this question, let it be remembered that our Civil Code (§ 4969) provides that "A petition in the nature of a cross-bill need not be filed in this State," but that the "defendant in every case may set up in his answer any matter which, under the English practice, should be the subject of a cross-bill." Following this reform in the practice in equity cases, it may be regarded as an established rule that matters which were appropriate to a cross-bill under the English practice can now be adopted as regular defenses, and that the complainant is as much bound to take notice of these matters as of any other matters which could be set up in the answer under the former practice. Let it also be remembered that Mrs. Latimer, one of the petitioners in the original bill, set out the various debts on which judgments were rendered against her and her property in the decree, and asked that these debts be charged on her separate interest. There being nothing in her description of these debts implying that they were not immediately enforceable, it no doubt seemed to the chancellor who rendered the decree that there was no reason why the court should not do complete equity by providing the process by which these debts could be collected out of the property on which they were charged. Nor was there anything appearing which rendered a general judgment against Mrs. Latimer inappropriate to the case. This court, in the case of *Ray* v. *Home & Foreign Investment Co.*, 106 *Ga.* 496, after giving the rules which govern the filing of cross-bills, said: "Applying these

rules to the present case, we think the court properly refused to dismiss the answer in the nature of a cross-bill on the ground that the matter set up therein was entirely independent of, or not germane to, the case made by the original petition. The petition sought to enjoin the defendants from exercising a power of sale in a deed given to secure the payment of certain notes. The defendant answered denying the plaintiff's right to an injunction, and by way of cross-bill asked for a general judgment on the notes, and a judgment setting up a special lien on the land. This was not a new and distinct matter, entirely independent of that set out in the original petition. The subject-matter of the petition and the answer in the nature of a cross-bill was one and the same. The issues raised in each involved the same debt, the same deed, the same land, and the same controversy. The petition sought to enjoin the defendant from collecting the debt by pursuing a remedy given in the deed. The effect of the answer was to abandon the remedy sought to be enjoined, and rely upon a remedy to be given by the court into which the defendant had been drawn by the petition of the plaintiff. A mere statement of the case seems to us to be all that is necessary to show that the answer in the nature of a cross-bill 'did not introduce new and distinct matters not embraced in the original suit.'" Under this apt authority, it would seem that even if Mrs. Latimer had appeared and objected to the cross-prayers in the answer, her objection might very well have been overruled. So far as the record discloses, she made no objection at all to the part of the answer which was in the nature of a cross-bill.

In the case of *Crowley* v. *Crouch*, 114 *Ga.* 137, this court held: "The ground upon which that part of the judgment of the court excepted to is alleged to be erroneous is, that there were no pleadings to authorize the same. There is no merit in this ground. While the petition prayed only for Crouch's removal as trustee, it set out the will of Mrs. Crouch and undertook to define his rights as to the property in question. His answer denied the construction put upon the will in the petition and set up what he contended to be his rights in the property under the will, and then, converting his answer into a cross-petition, he prayed that his rights as life-tenant should be protected by the judgment of the court. The court, therefore, properly had before it not only the

question of removal or non-removal of Crouch as trustee, but also that of passing upon the prayer of his cross-petition." This court has also held: " It has long been the law that where a court of equity obtains jurisdiction for one purpose, it will retain it until complete justice has been done to all parties," citing Civil Code, § 3925; *Mays* v. *Shivers,* 7 *Ga.* 238; *Martin* v. *Tidwell,* 36 *Ga.* 332. This quotation is taken from 106 *Ga.* 497. In the case of *Carlton* v. *Insurance Co.,* 72 *Ga.* 393, after reciting that certain cross-prayers were made by the defendants relating to the fund in controversy, this court said: " The code makes an answer in the nature of a cross-bill stand as a cross-bill. . . So that the demurrer was not properly sustained on the ground that it [the answer] is not germane. Nor do we think that the ground is aided by stating that the cause arose for relief after the original bill was filed. It arose by the bill, and is germane to it; nay, it existed before; knowledge may have come to defendants since the bill was filed. But for the allegations of the bill, it may not have been known or a suit been instituted; but if the bill uncovers facts transpiring before it was brought, and discovers equitable rights to the defendants, why should they not ask relief arising from those facts? Must they bring a separate suit in such a case? Equity does nothing by halves, but gives complete relief. He who seeks it must do it. Code [of 1882], §§ 3084, 3085; 14 *Ga.* 323; 36 Id. 332. And he must do it, we think those cases rule, in the very case in which he himself seeks it, if the relief sought by the defendants be akin to the subject in regard to which he seeks relief for himself." We therefore think that the case made by the original equitable petition filed by Mrs. Latimer and her coplaintiffs, and the case made by the answers thereto, were akin, were germane to each other; and that the chancellor who rendered the decree in that case might well have held that an objection to the cross-equity set up by the answers could not be sustained. Can it be assumed that the court, when asked to charge a debt upon specific property, by a debtor who in his petition sets out the debt and discloses no reason why it should not be paid nor asserts that it is not due, would refuse, on the prayer of the creditor, also to decree a payment of the debt? Would the court by one proceeding charge the debt on the property, and then hold that a subse-

quent proceeding would be necessary to obtain a judgment on the debt, under the circumstances stated? We think not.

3. In the present bill, assailing the decree rendered in the former case, it is complained that the debts set out in the original bill were not in fact due until nearly a month after the decree was rendered. And it is to be assumed that if the chancellor had been informed by the pleadings, or otherwise, that the debts of the plaintiffs to the defendants were not due at the hearing of the partition proceedings, he would, in the exercise of his equitable powers, have given such a direction in the decree as would protect Mrs. Latimer against a premature enforcement of the judgments. Recurring to the question (which we have already considered) as to its being the duty of Mrs. Latimer to attend during the progress of her case and watch all of its incidents and emergencies, is it not true that she is herself at fault in not having disclosed in her original petition the fact that these debts had not matured, if she wished to insist that the judgments prayed for by the defendants should not be rendered because the debts were not yet due? Might not the court have assumed that she had no defense to the cross-prayers set forth in the answers of the defendants? Certainly, if she had any objections to urge against the granting of these prayers, she was guilty of negligence in not making known such objections before the court rendered its decree. Our attention has been called to two cases in 78 *Ga.* (*Sanner* v. *Sayne*, 467, and *Dye* v. *Garrett*, 471), in which judgments rendered by the court without a jury were arrested, because it appeared that suit had been instituted upon a series of notes, one only of which appeared on its face to be due. But in each of those cases the plaintiff relied for a recovery upon a special contract, alleged to have been made at the time the notes were given, to the effect that if default should be made in the payment of any one of the notes, all other notes of the series remaining outstanding should at once become due; and this court merely held, that, as the suits were not based upon an unconditional contract in writing, the judge of the trial court was without jurisdiction to render judgment without the intervention of a jury on such of the notes as had not on their face reached maturity. In other words, it was held that the judge had no power, under the constitution of this State (Civil Code, § 5848), to render a judgment, in

a case of that nature, without the verdict of a jury, notwithstanding there may not have been filed any issuable defense under oath or affirmation.    In neither of these cases was there any consent by the parties that the judge should hear and determine the issues involved, without the intervention of a jury.    In view of all these considerations, we do not think that the court below could, on this ground alone, reopen the decree in the partition proceedings. The debts are now due.

4. What has been heretofore said is a sufficient reply to the complaint that the pleadings in the original case were not sufficient to support the judgments rendered in favor of the defendants.    Mrs. Latimer and her coplaintiffs were responsible for the filing of the equitable petition in that case.    The defendants, by their answers, admitted all the facts set forth in the petition. Where a petition recites the rights of the defendants thereto, we know of no rule of practice which requires their answers to be fuller than the case which the plaintiff makes, except as to cross-prayers for the relief to which they are entitled.    The creditors of Mrs. Latimer, who were made parties defendant to her equitable petition, confessed the case she stated, and based their prayers upon that case.    The administrators of the estates in which she claimed an interest, who were also made parties defendant, likewise admitted the right of Mrs. Latimer and her coplaintiffs to the relief sought by them, and set forth, by way of an answer in the nature of a cross-bill, only such rights as they, in their capacity as the legal representatives of the estate, could justly assert against the plaintiffs.

It was also complained, on the argument before us, that the judgments rendered by the chancellor in the decree on the original bill and answers aggregated in amount $813.59 in excess of all obligations signed by Mrs. Latimer.    If we understand this complaint, it grows out of the fact that the defendant administrators, who were called on by the plaintiffs' petition to render an account of their administration, asked a judgment against Mrs. Latimer for her proportion of certain advances made by them in excess of the receipts realized by them in managing the estates which they represented.    In the answer filed by these administrators, they specially prayed judgment against the plaintiffs for these advances; and this being so, we think it was entirely proper

for the chancellor, when the accounting prayed for by the plaintiffs was taken, to allow the administrators to assert their claim against the estates for the amount expended by them in excess of their receipts, and to make this claim a charge against the lands sought to be partitioned.    Certainly this prayer and allowance were germane to the case made by the plaintiffs' petition.

5. On the argument before this court, counsel for the plaintiff in error also directed our attention to the fact that the answers made by the defendants in the original case had not been marked filed.   All that seems to be required of a defendant, under the statute regulating the practice in such cases, is that he shall appear at the return term of the cause and make his defenses in writing, signed by himself or by counsel.    Civil Code, § 5052. Whether the clerk of the court did or did not make an entry of filing on the answers of the defendants to the petition to which Mrs. Latimer was a party plaintiff is a matter which can not affect the validity of the decree rendered in that proceeding, if these answers were actually before the court and in its custody at the time the decree was made.    These answers were not only in court, but were considered by the judge who rendered the decree, as appears from the decree itself.

6. While inadvertent errors in a decree may be corrected, the general rule is that a bill of review will not lie against a consent decree.   *Hargraves* v. *Lewis*, 7 *Ga.* 119 ; *Cunningham* v. *Schley*, 68 *Ga.* 105, 113.    The reasons for this rule are pithily stated in law Latin :   Consensus tollit errorem — Volenti non fit injuria.

7. And there is no specification of any fraud in the procurement of the decree.

*Judgment affirmed.    All the Justices concur, except Lamar, J., disqualified.*