BECKER *et al.* v. DONALSON *et al.,* and *vice versa.*

1. Evidence of an entry in a book, made by one of two defendants, being admissible as against the defendant who made the entry, was not rendered inadmissible because the book was not one of original entries, or because it was not admissible as against the other defendant.

2. In this case it was erroneous to admit in evidence the testimony, "When he [B. A. Becker] returned home he offered to sell out the entire interests, saying that his father had directed him to do it;—offered to sell their entire interests for $25,000.00."

3. Where an objection to testimony makes the direct question of its admissibility or inadmissibility, and is not one connecting it with other testimony, or the like, the better practice is to rule directly on the question, and not admit it "for the present."

(a) It is not necessary to deal further with certain of the grounds of the motion for new trial which complain of rulings admitting certain testimony "for the present."

4. The right of cross-examination, thorough and sifting, which belongs to every party as to the witnesses against him, should not be abridged, especially where the witness is the opposite party to the cause on trial, and is testifying for the purpose of making out his own case.

5. The instructions to the jury as set forth in the fifth, sixth, and seventh divisions of the opinion were not adjusted to the evidence.

6. None of the other grounds of the motion for new trial not specially dealt with above are sufficient to require the grant of a new trial.

7. Since the adoption of the uniform procedure act of 1887 (Acts 1887, p. 64), the provisions of which are set forth in part in the Civil Code, § 4833, where the plaintiffs institute suit for specific performance of an alleged contract for the conveyance of land, for cancellation of deeds, for injunction, and for damages, founded upon their alleged right to the land, the defendants may in their answer assert a right to affirmative relief, such as damages alleged to result from trespass by the plaintiffs upon the land in dispute, and may afterwards by amendment to their plea assert a right to such damages which occurred subsequently to the filing of the original plea.

Decided February 16,—Rehearing denied February 24, 1910.

Equitable petition.   Before Judge Spence.   Decatur superior court.   December 28, 1908.

This was a suit by John E. Donalson and the Chattahoochee Lumber Company for specific performance of an alleged agreement to convey a certain tract of land in Decatur county, Georgia, and for an injunction to prevent interference with the property.   The verdict was for the plaintiffs.   The defendants excepted to the judgment overruling their motion for a new trial.   A cross-bill of exceptions complains of the allowance of an amendment to the defendants' answer.   The other facts sufficiently appear in the opinion.

*M. E. O'Neal* and *Pope & Bennet,* for Becker et al.

*Albert H. Russell* and *T. S. Hawes,* contra.

ATKINSON, J.   1.   One ground of the motion for new trial complains of error in allowing a witness to testify that "the $1250.00 which was paid for this land was credited on the ledger of the Donalson Lumber Company kept by B. A. Becker.   Mr. B. A. Becker made the entries; it is in his handwriting."   The same ground complains of error in admitting in evidence the entry referred to by the witness, which appeared "on the ledger No. 3, page 590, the substance and effect of which was to credit Ed. C. Becker in the year 1897 by the purchase of 625 acres of land, July 6th, 1894, $1250.75."   The objection urged to the admission of the evidence was, "that it sought to bind and affect the rights of E. C. Becker by an entry made on the books by B. A. Becker, of which entry E. C. Becker had no knowledge or notice,  .  . whereas said evidence is wholly irrelevant as relating to transactions be-

tween B. A. Becker and his principal, the Donalson Lumber Company, and not to a transaction in which the said E. C. Becker was concerned or by which the said E. C. Becker was affected, the only evidence introduced in said case in reference to any agency of E. C. Becker being the evidence of John E. Donalson, a witness for the plaintiff, to the effect that Mr. Becker was in Georgia looking after his father's interests and acting in the capacity as secretary and treasurer of the Donalson Lumber Company, and that B. A. Becker represented E. C. Becker, and that E. C. Becker had told John E. Donalson that B. A. Becker would look after E. C. Becker's interests down here; and the evidence of E. C. Becker to the effect that B. A. Becker was a local representative of his (B. A. Becker's) and E. C. Becker's interests in the Donalson Lumber Company, and that Mr. E. C. Becker expressly told John E. Donalson and also wrote him that B. A. Becker would represent their interests in all matters pertaining to that, and always gave express power in delegating authority." The objection was also urged, that "said entry on said books was and purported to be copied from ledger two, page 187, and was not and did not purport to be a book of original entries, and said entry was not admissible without producing or accounting for said ledger No. 2 from which the same was copied, and that said ledger No. 2 was not produced and not accounted for." The objection to the evidence, in so far as it affected E. C. Becker, was well founded, but B. A. Becker was a party defendant and claimed the land as a purchaser from E. C. Becker by purchase made subsequently to the time it was contended by plaintiffs that the Donalson Lumber Company had made its contract with E. C. Becker for the purchase of the same land. As it was affirmatively shown that the entry complained of was in the handwriting of B. A. Becker, it was admissible as against him, at least as a circumstance tending to show that he had notice of the alleged contract between E. C. Becker and the Donalson Lumber Company. Being admissible for that purpose, and the writing being the original writing of B. A. Becker, the fact that the entry was found in a ledger rather than in an ordinary day-book or other book of original entries became immaterial, and would be no cause for the grant of a new trial. As to B. A. Becker the entry was original. The evidence would not be rendered entirely inadmissible merely because it did not bind E. C. Becker.

2. In another ground of the motion for new trial complaint is made of the ruling of the court in allowing a witness to testify, "when he [B. A. Becker] returned home he offered to sell out the entire interests, saying that his father had directed him to do it;— offered to sell their entire interests for $25,000.00." The objection urged to the admissibility of this evidence was, "that it was mere hearsay testimony as to what E. C. Becker had directed B. A. Becker to do," and "by said evidence it was sought to bind E. C. Becker and establish an agency on the part of B. A. Becker for E. C. Becker by mere declarations of B. A. Becker." It was insisted, in reply to the objections urged, that the agency of B. A. Becker was fully established by other evidence, and that there was no attempt by the testimony introduced to prove agency by the sayings of the agent. We do not think this answer sufficient to meet the objection. The evidence taken altogether was not sufficient to show that E. C. Becker had authorized B. A. Becker to sell out his entire interests in the business. To sell out the business was quite different from representing E. C. Becker's interests in the business generally at the place where it was conducted. The evidence recited in the ground of the motion for new trial dealt with in the first division of this opinion is substantially all of the evidence tending to show agency on the part of B. A. Becker, except in the particular instance where a special power of attorney was executed, authorizing B. A. Becker to settle certain mortgages, etc., which did not purport to contemplate such authority as that contained in the evidence to which objection was made. The evidence referred to in the first division of this opinion, tending to show agency on the part of B. A. Becker, contemplated power to represent the interests of E. C. Becker in a continuing business rather than power to make disposition of the business. That agency can not be proved by the sayings of an agent, see *Franklin County Lumber Company* v. *Grady County,* 133 *Ga.* 557 (66 S. E. 264), and cit.

3. The 7th and 8th grounds of the amended motion for new trial complain of the ruling of the court in regard to the admissibility of certain testimony. When objection was made to it, the judge announced that he would admit it "for the present." There was no further motion made to exclude it, nor was any further ruling otherwise invoked as to its admissibility. A new trial will be granted on other grounds, and the questions presented will not

likely arise again. We do not think it necessary to deal with these two grounds further than to make reference to the practice of admitting testimony "for the present" when objection is offered to its admissibility. Where, as in this case, the objection makes a direct question of the admissibility or inadmissibility of the testimony, and there is no question connecting it with other testimony or the like, the better practice is to rule directly on the question and not to admit it "for the present." This case differs from *Cawthon* v. *State,* 119 *Ga.* 396 (46 S. E. 897), where the testimony objected to was to be connected with the testimony of another witness to be examined.

4. Another ground of the motion for new trial was, because the court erred in refusing to allow movant's counsel to ask certain questions, and in refusing to allow the witness to answer them. The witness was one of the plaintiffs, testifying in his own behalf, and was under cross-examination. He had testified, that the land in controversy was the property of the Donalson Lumber Company, but it had never gotten a deed for it; that the title thereto was held by E. C. Becker as security for the money which he had furnished with which to buy it; and that witness had written to E. C. Becker, asking him to make a deed after a certain trade with Williams. After delivery of the testimony to this effect, movant's counsel asked the witness, "Why did you not get a deed then [at the time of the transfer from E. C. Becker to W. T. Williams] and have the deed [to E. C. Becker] cancelled?" When this question was asked the court interposed, saying, "I will rule out that question;" and when counsel for movants immediately afterwards asked the witness, "You did not do it, did you?" the court again interposed, saying, "You need not answer that." The exception was: "Movants insist that said questions were pertinent, legal, and proper, for the reasons that movants insist that if said land had been held merely as security for the repayment to E. C. Becker of the amount which he had furnished with which to buy the same, then and in that event the natural thing for him to have done would have been for him to get a deed conveying said land from said E. C. Becker when the transfer had been made to Williams, and thereby all indebtedness due to E. C. Becker by the Donalson Lumber Company had been settled, and the failure on the part of the said Donalson to mention said deed at the time when the transfer was made to Will-

iams was a relevant fact bearing out the theory of movants that this land now in controversy was the land of E. C. Becker, and that the title was not held by E. C. Becker merely as security for the money which he had furnished with which to pay for said land; and in refusing to allow said questions or answer thereto movants submit the court erred, and they now assign error on said ruling." It will appear from the recitals of the ground of the motion for new trial with which we are now dealing that the witness from whom the answers were sought to be elicited by the questions propounded was one of the plaintiffs, testifying in his own behalf, and the questions were asked on the cross-examination. It is erroneous to abridge the right of cross-examination, and to do so is generally cause for the grant of a new trial. Civil Code, § 5282; *Barnwell* v. *Hannegan*, 105 *Ga.* 396 (31 S. E. 116); *Atlantic Coast Line R. Co.* v. *Powell*, 127 *Ga.* 805 (56 S. E. 1006, 9 L. R. A. (N. S.) 769). Upon the question as to whether there was a contract between E. C. Becker and the Donalson Lumber Company, by which that company should receive a deed from E. C. Becker upon repayment of the money paid out as the purchase-price for the land, the testimony of the witness under cross-examination, testifying in his own behalf, and the testimony of one of the defendants testifying in his own behalf, was in sharp conflict, so much so as to suggest the consideration by the jury of the question of credibility of the witnesses. The answers which the witness may have made to the questions may not have been considered by the jury as satisfactorily explaining his failure to ask for the deed at the time of the alleged settlement, and may have been regarded as a circumstance tending to corroborate the testimony of the other witness rather than that of the witness under cross-examination. Under this view the court should not have suppressed the questions propounded.

5. The court charged: "It is further contended that the fact that the Beckers had notice of the sale after circulars had been issued, knowing what were its contents, and allowing afterwards a sale to be made to W. T. Williams, they are estopped from setting up any title to the lands in controversy." Also: "The plaintiffs insist that they had a right to transfer the lands in controversy, and that they had a right to presume they were included, because they insist E. C. Becker had been put on notice that these lands were included in a circular which had been issued and circulated, offer-

ing to sell these lands as a part of the assets of the Donalson Lumber Company, and E. C. Becker had notice to that effect, that is, that they were offering these lands together with other lands as a part of the assets of the Donalson Lumber Company to W. T. Williams, or anybody else who would become a purchaser, and that he after having that notice remained silent on that point and went ahead and accepted the money of W. T. Williams, and that being true, E. C. Becker and his successor in title, B. A. Becker, would be estopped from setting up an independent title to that land now; that it would be such a legal fraud upon W. T. Williams for them to be allowed to set up title to these lands now as that they would be estopped from doing so." Exception was taken to the charge as contained in the foregoing excerpts, upon the ground that there was no evidence to support it, and upon the ground that the evidence failed to show that E. C. Becker had notice of the matters relied upon to create an estoppel. There was no evidence to show notice to E. C. Becker directly of an intention to sell to Williams, or conduct on his part relied on by Williams which would make an estoppel. Notice to B. A. Becker was not notice to E. C. Becker concerning a matter in which B. A. Becker did not have authority to represent him. There was no evidence to show that B. A. Becker had authority from E. C. Becker to sell this land, and, therefore, no foundation for the proposition that notice to B. A. Becker of Donalson's attempt to sell the land as the property of the Donalson Lumber Company would estop E. C. Becker.

6. The court also charged: "If E. C. Becker, as a stockholder of that company, had full knowledge of the fact, and was put upon full notice of the fact that John E. Donalson, another one of the stockholders and president of the company, was advertising to the world the Donalson Lumber Company's plant and all of its assets, and had included in this proposition to sell these particular lands (now in controversy), and E. C. Becker knew of it and was aware of it, if he stood by and did not assert his title to it and allowed Donalson to sell it to an innocent party for value, then he would be estopped from setting up any title to it thereafter." Error was assigned upon this charge, and several reasons were stated upon which it was contended that error had been committed, among them being that there was no evidence to authorize it. It is sufficient to say that E. C. Becker was not in Georgia at the time, but was at his

home in St. Louis, and it does not appear that he communicated with Williams by letter or otherwise, so as to mislead and induce him to make the purchase, and he could not properly be regarded as one who, in the language of the court, "stood by," and, seeing the sale made to W. T. Williams, failed to object, thereby misleading and permitting Williams to act to his injury.

7. The court also charged: "If B. A. Becker, who is a defendant in this case,—if you believe from the evidence that acting as the agent of E. C. Becker, whether it was with authority or without authority, he assumed to be his agent, the agent of E. C. Becker, and sold these lands to W. T. Williams, and signed an agreement by which W. T. Williams became the purchaser of these lands, paid his money for it—had full knowledge of the fact that W. T. Williams was buying this property with this understanding—that he (Williams) was getting these lands, then B. A. Becker could not afterwards set up title to it, and would be estopped from setting up title to it." One of the criticisms upon this charge was that there was no evidence upon which to base it. There was no evidence that B. A. Becker was a party to the deed by which the lands of the Donalson Lumber Company were conveyed to Williams, including the lands in dispute. Donalson testified that such a deed had been executed, but that it was executed by him as president of the Donalson Lumber Company. The contract of October 17th, executed by Becker individually and as attorney in fact for E. C. Becker, did not purport to convey the lands in dispute. There was no written contract in evidence to which the court could have made reference in the charge, and the language used by the judge was not adjusted to the evidence.

8. All other grounds of the motion for new trial have been carefully considered in connection with the entire evidence and charge, and none of them are sufficient to require the grant of a new trial.

9. The cross-bill of exceptions complains of the ruling of the judge allowing the defendants to amend the plea for affirmative relief, by setting up damages which occurred after the original suit and after the original answer were filed. The original suit was for specific performance of an alleged contract for the sale of land, for the cancellation of deeds, for damages on account of interference with the plaintiffs' possession of the land, and for injunction. The defendants came into court, and, after answering the allega-

tions of the petition, added other allegations, setting up title to the land; alleging that the plaintiffs had damaged them by cutting and working the pine trees on the land for turpentine purposes, and by cutting therefrom the sawmill timber; and praying for a judgment for damages.    The suit remained in court after the answer was filed, for several years, and when it came on finally to be tried the defendants amended their plea by setting up damages based on other acts of the plaintiffs in working the trees for turpentine purposes and cutting sawmill timber from the land subsequently to the filing of the original plea up to the time of the trial. The plaintiffs objected to the allowance of so much of the amendment as sought to recover damages after the filing of the original plea, on the ground that it "set out a new and distinct cause of action."    In their brief before this court the plaintiffs cite Civil Code, §3884, and *S. & O. Canal Co.* v. *Bourquin,* 51 *Ga.* 379.    The provisions recited of the code section are as follows: "Damages for a continuing trespass are limited to those which have occurred before the action is commenced.    Subsequent damages flowing from a continuance of the trespass give a new cause of action."    To the same effect is the principle ruled in the case cited.    The contention is that although a cause of action for damages in favor of the defendants against the plaintiffs with respect to the subject-matter in dispute may have occurred pending the litigation, and after the defendants had filed the original plea, nevertheless the damages could not be included in the suit and be found by the judgment to be rendered.    Under the authorities above cited, if a trespass is continuous the plaintiff may at his election, before the entire injury is done, sue for any damages which have resulted from the injury within the statute of limitations.    Other damages occurring thereafter might be made the subject-matter of other suits.    These are rights which exist purely at law, and are generally to be exercised by a plaintiff in a suit at law for damages; but it does not follow that the scope of the litigation may not be enlarged by matters which could be set up by a defendant, or that other rights and remedies could not be afforded in the suit under changed conditions. When the plaintiff files his suit, showing proper parties plaintiff and defendant, and a cause of action within the jurisdiction of the court, and prays for appropriate and substantial relief, the court takes jurisdiction of the cause, and thereafter the power of the

court is to be considered in regard to the future conduct of the case. It has been held that where there is no cause of action at the commencement of the suit, a plaintiff can not recover, although one may accrue respecting the same subject-matter while the suit is pending. *Baker* v. *Tillman,* 84 *Ga.* 401 (11 S. E. 355) ; *Wadley* v. *Jones,* 55 *Ga.* 329. Such rulings are founded upon the reason that there is no cause of action if the defendant is not in default, and the court will not take jurisdiction when there is no cause of action. The reason of the ruling evidently does not apply to a defendant whose office is not to confer jurisdiction, but to respond in a matter over which the court has already assumed jurisdiction upon the invocation of the plaintiff. By the adoption of the uniform procedure act of 1887 (Acts 1887, p. 64), contained in part in the Civil Code, §4833, "The superior courts of this State, on the trial of any civil case, shall give effect to all the rights of the parties, legal or equitable, or both, and apply on such trial remedies or relief, legal or equitable, or both, in favor of either party, such as the nature of the case may allow or require." The plaintiffs in the present suit sought relief against the defendants, which, in character, was both in equity and in law. They sought to enforce rights with respect to certain property, and, responding, the defendants denied the existence of the plaintiffs' rights, as claimed, in the property, and asserted title to the property, and charged that the plaintiffs had damaged them by trespassing on the property. The conflicting claims related to the same subject-matter. The court had jurisdiction of the parties and the subject-matter, and it was appropriate to adjudicate in that proceeding, without requiring further suits, the claims set up by the defendants. The amendment was germane, and the objection urged was not sufficient cause to require its disallowance. See, on the general subject: *Ray* v. *Home & Foreign Investment &c. Co.,* 106 *Ga.* 492 (4), (32 S. E. 603) ; *Latimer* v. *Irish American Bank,* 119 *Ga.* 887-95 (47 S. E. 322) ; *Baxter* v. *Camp,* 129 *Ga.* 460 (4), (59 S. E. 283) ; *DeLacy* v. *Hurst,* 83 *Ga.* 223 (4), (9 S. E. 1052) ; *Georgia Iron Company* v. *Etowah Iron Company,* 104 *Ga.* 395-9 (30 S. E. 878) ; *Cook* v. *Georgia Land Company,* 120 *Ga.* 1068 (48 S. E. 378) ; *McCall* v. *Fry,* 120 *Ga.* 661-63 (48 S. E. 200).

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*