## BECKER *et al. v.* DONALSON *et al.*

1. E. C. Becker paid the purchase-price of land, and a deed was taken in his name. It was an issue as to whether this was his individual transaction or was one for the Donalson Lumber Company (a corporation), the deed being taken in his name merely as security, and the purchase-money paid as an advancement, the corporation thereby becoming his debtor. Relatively to such an issue it was not erroneous to admit in evidence from the ledger books of the corporation certain accounts of E. C. Becker, which, among other items, included one purporting to show the corporation to be his debtor for the amount of the purchase-money, it appearing from other evidence that E. C. Becker had examined the books and footed up the account and made no denial that the corporation was his debtor.

(*a*) The object of the evidence was not to prove the correctness of the account, and the books were not inadmissible because there was no compliance with the statute in regard to preliminary proof of the correctness of the books of account when offered for such purpose.

2. Another issue involved the contention of Donalson, that, even if the land was not purchased for the corporation, E. C. Becker subsequently authorized Donalson to make sale of all his holdings at the domicile of the corporation, including the land in dispute, and that in pursuance of such authority a sale was made and the entire purchase-price paid, thereby obligating E. C. Becker to convey the land to the purchaser under whom Donalson claimed. In view of this contention and certain evidence as to the authority of B. A. Becker, which did not appear on the former trial, relative to his agency, and other evidence as to acts upon the part of E. C. Becker, when considered in connection with the evidence as to the consummation of the sale and the acceptance of the purchase-price by E. C. Becker, there was no error in the rulings of the court admitting in evidence a certain letter and telegram from B. A. Becker to Donalson in regard to a price that E. C. Becker would

accept for his interest in the Donalson Lumber Company, and testimony as to the agency of B. A. Becker, or relative to what Donalson did in advertising and consummating a sale of the property, and other evidence as referred to in the second division of the opinion.

3. In view of the pleadings, and of other evidence by the same witness, there was no error in excluding certain testimony of Donalson to the effect that he was one of the purchasers of the property and that he and Williams, his joint purchaser, had an agreement that a new company should be organized after the purchase from Becker, which should take over all of the property of the Donalson Lumber Company.

4. The relevancy of certain documents which the judge excluded from evidence was not made to appear.

5. The judge charged: "By a preponderance of the testimony is meant that superior weight of the evidence upon the issues in the case which, while not enough to wholly free the mind from a reasonable doubt, is yet sufficient to incline the reasonable and impartial minds of the jury to one side of the issue rather than to the other. The burden is upon the defendant in this case to make out his case under the rule of law just given you, and in the cross-bill filed by the defendant the burden is upon him, the defendant, to make out against the plaintiff under the same rule of law the contentions set out therein." *Held*:

(*a*) It clearly appears from the context that the use of the word "defendant" was a mere slip of the tongue, and that the word "plaintiff" was intended to be used.

(*b*) The judge elsewhere charged: "A parol contract for land should be so clearly, strongly, and satisfactorily shown and proven as to leave no reasonable doubt as to the agreement or contract." In the light of the entire charge, that portion of it copied above, on which error was assigned, affords no cause for a new trial.

6. The general charge, giving the rule as to the impeachment of witnesses, while not authorized by any evidence in the case, was not cause for a new trial, because under the facts of the case it was not calculated to injure either side.

7. Other assignments of error upon the charge of the court were not meritorious.

8. The evidence was sufficient to support the verdict, and there was no error in overruling the motion for a new trial.

AUGUST 14, 1912. REHEARING DENIED SEPTEMBER 24, 1912.

Equitable petition. Before Judge Frank Park. Decatur superior court. July 5, 1911.

*Pope & Bennet* and *M. E. O'Neal,* for plaintiffs in error.

*Donalson & Donalson* and *T. S. Hawes,* contra.

ATKINSON, J. This case was before the Supreme Court on a former occasion. *Becker* v. *Donalson,* 133 *Ga.* 864 (67 S. E. 92). In that instance Donalson had recovered, and Becker excepted to the judgment of the trial court refusing a new trial. On review in the Supreme Court the judgment was reversed. On the subse-

quent trial Donalson again recovered. Becker moved for a new trial, and excepted to the judgment overruling the motion. It is unnecessary to refer to the character of the suit further than to say that it was one for specific performance and other equitable relief.

1. E. C. Becker paid the purchase-price of the land, and the deed was taken in his name. It was an issue whether this was his individual transaction, or was one for the Donalson Lumber Company (a corporation), the deed being taken in his name merely as security, and the purchase-money paid as an advancement, the corporation thereby becoming his debtor. It was contended, in the motion for new trial, that the court erred in admitting in evidence, over objection of the defendants, the ledger kept by the Donalson Lumber Company, which contained the account of E. C. Becker with the company. The items thus objected to were as follows: "1897, Apl 9- By D. purchase of 625 acres of land July 6/94 1250.75," and "Aug. 24th To Ledger # 4-300 3726.25." The footing of the column in which the last-quoted item appears amounted to $3,726.25, such item being the only one in that column. The column in which the first item above quoted appears footed up the same amount, there being two other items in this column. The account and the two items quoted were objected to as being irrelevant and not competent to bind E. C. Becker, because, as contended by the defendants, he had no knowledge of the entry of such items on the books; and on the further ground that no preliminary proof as to the correctness of the books, as required by statute, had been submitted in order to let the books in as evidence. In reference to this account John E. Donalson, a witness for the plaintiffs, testified as follows: "There was no complaint by E. C. Becker as to the correctness of this account. This addition and footings on this page were made by B. A. Becker; that includes the $3,726.25 brought forward from the other page, and also the price of land in question." B. A. Becker, a witness for the defendants, testified: "I kept the books of the Donalson Lumber Co. That is my handwriting; those figures represent the totals of these columns. I added them up, and it makes a balance of $46,186.55. That entry of Aug. 24th, by ledger 3, page 590, $3,726.25, is Mr. E. C. Becker's handwriting in 1897. . . I understand bookkeeping. We would not put those entries in there

now; that entry means the balance from the old page,—we added at the top instead of these before it. I added it up; it showed the Donalson Lumber Co. owed my father $46,186.55 balance. That is ledger No. 3; that is the account of Ed. C. Becker, 1895; in 1897 it showed a credit balance of $3,726.25 on these books, that is on page 590 ledger No. 3, account of Edward C. Becker. . . That part of that account of $46,186.55 is based on $3,726.25 brought forward from this ledger No. 3, page 590; it was brought there as a balance of August 24th." It appears from this evidence that the item of $1,250.75, which was the price of the land in question paid by E. C. Becker, constituted one item of the account which footed up $3,726.25, which footing showed the total indebtedness of the Donalson Lumber Company by account to E. C. Becker, and that he himself made the entry of August 24th, 1897, showing such total indebtedness by the company by account to him. It is clear that this evidence tended to show that he knew of the entry of the $1,250.75, the price he paid for the land, as it was necessarily included by him in the entry of $3,726.25 which he made. This evidence did not appear from the record when this case was formerly before this court, when it was ruled that the entry of $1,250.75 was not admissible as against E. C. Becker. The evidence objected to was admissible on the second trial, in the light of the other evidence above referred to, as against E. C. Becker, as tending to support the contention of the plaintiffs that the property was bought for the Donalson Lumber Company, and that E. C. Becker merely advanced the money under a contract that it should be repaid, and thereafter he should convey the title to the corporation. The book admitted in evidence, which contained the account of E. C. Becker with the Donalson Lumber Company, in which the items above quoted appeared, was admissible without complying with the provisions of the Civil Code, § 5769, relating to preliminary proof for the admission of books of account in proof of the accounts contained therein. The account was not admitted for the purpose merely of proving it, but as tending to show that the Donalson Lumber Company was acting in pursuance of its contention that the land in question was purchased by E. C. Becker for the company, and that the company owed him the purchase-price which he had paid for it, and that E. C. Becker had seen the account containing such entries, and had made no objection to the

account, but had himself made the entry therein as to the amount of the credit due him in the account, which might have included the price he had paid for the land; all of which tended to show acquiescence on his part as to the above-stated contention of the company.

2.   The plaintiff introduced a letter from E. C. Becker to John E. Donalson, dated August 15th, 1898, the substance of which was that Becker would "give no more options, but an offer of $29,000.00 for my interest in the company, including all obligations I hold against the company, also including Bontie's [B. A. Becker's] interest, including receipt in full for what obligations the company has against Bontie,—it also · includes the 600 acres of land in my name,—I would accept; and if you should not find party that would give that by end of September, I wish you would recommend some attorney to me, so that I could get order of sale of property under second mortgage, as you would then have better chance, with company obligations out of way, and clear title, to sell the whole of it, for more than $29,000.00 and cost of sale.   $29,-000.00 is the lowest I will take, as it would then net me a loss of $50,000.00.   I hope you will agree with me on my views." After the introduction of this letter the witness Donalson was permitted to testify:  "Acting under that letter, I commenced trying to find a sale for the Donalson Lumber Company property.   Eventually I issued a circular, dated Jan. 20, 1899, and this is the circular [the circular describing the mill, lands, and numerous other property of the Donalson Lumber Company, and offering all for sale, there being included in the lands offered about 3,000 acres of land, which Donalson testified belonged to him individually, and also the 625 acres now in controversy].   I mailed one of them by due course of mail to E. C. Becker, at St. Louis, Mo., in an envelope properly sealed and stamped, at his address, deposited in the post-office, at Donalsonville, Ga.   I consulted with Mr. B. A. Becker frequently about this matter, read this to him in manuscript before I had it [the circular] printed.   There was a number of those circulars lying on Mr. B. A. Becker's desk.   I don't know whether he ever read it afterwards or not.   Sometime after, Mr. W. T. Williams came to me with that identical circular in his hand, and we talked it over.   I mailed this circular to all the names I could get of parties who were mill men, trying to find a purchaser.   My

recollection is that we duplicated that circular, identically the same thing, but dated it a little later, probably March; that it, the same way, was mailed all over the country. After a while Mr. W. T. Williams came to Donalsonville, and had that very circular which we now have in evidence, and wished to buy this property. He went over it—was there several days, and finally offered to give me $60,000.00, and that was to include some land that I owned in my name. I do not recall the number of. acres, but the amount agreed on for my land was six thousand and odd dollars, and the Donalson Lumber Co. land and property was fifty-three thousand and odd dollars, the two making up $60,000.00. We went to Savannah, had a conference with Mr. Williams' associates, and the result was, we came back to Donalsonville with a promise on the part of one of them that he would come over to Donalsonville soon and close the matter up. It was John Cummings, and he did not get over till about the middle of October [1899]. Mr. Becker went over to Bainbridge and got Mr. A. L. Townsend as his lawyer, and we met on the night of October 18th, to close this matter up. They submitted one paper which was admitted by the defendants in their answer to be correct. The sale to Mr. W. T. Williams was consummated thus." The defendants objected to the admission of this evidence, on the ground that it was irrelevant; and insisted that the facts shown thereby could not constitute an estoppel as against E. C. Becker, for the reason that his offer, as contained in the letter of August 15th, was expressly limited to the time intervening this date and the end of September following, it not being contended by the plaintiffs that any of the circulars were issued, or any of the transactions which finally culminated in the sale to Williams were made, prior to the end of September, and E. C. Becker not having received the circular until after the sale made to Williams, and the sale not embracing any land whatever, but being simply a sale of the mortgage and other obligations held by E. C. Becker and B. A. Becker against the Donalson Lumber Company, including one fourth of the capital stock of the Donalson Lumber Company. It is now contended that the sale could not amount to an estoppel as to more than a one-fourth interest in the lands in controversy, it appearing from the evidence of Donalson that at the time of the sale to Williams there was an agreement between him and Williams that upon the consummation of the

sale he and Williams would reorganize the sawmill of the Donalson Lumber Company as "co-owners," and that the sale to Williams was really a sale to him for the benefit of himself and Donalson, and that the negotiations therefor were conducted by Donalson acting for Williams and himself, and hence the knowledge of Donalson of the fact that the title to the lands was not in the Donalson Lumber Company would be imputable to Williams, and therefore there could be no estoppel. The court overruled the objections and admitted the evidence, and error was assigned. The admissibility of this evidence did not depend upon its sufficiency to constitute an estoppel. It would be admissible if upon any theory it tended to elucidate any issue involved in the case. One of the plaintiff's contentions was, that even if, in the first instance, the land was bought by E. C. Becker for himself, and there was no parol contract between Becker and the Donalson Lumber Company by which Becker should convey to that company upon repayment of the purchase-price, nevertheless the offer contained in the letter of August 15 was a proposition to sell the land, and that this offer was never withdrawn, but that after its submission Donalson acted upon it, and from time to time had further negotiations with E. C. Becker directly, and with B. A. Becker, who was alleged to be the agent of E. C. Becker relatively to a sale of the property, until a sale was eventually consummated on October 17, 1908, There was, evidence of agency upon the part of B. A. Becker for E. C. Becker, which was not introduced upon the former trial. B. A. Becker had attained the age of majority before any of these matters testified about occurred; and E. C. Becker testified that while B. A. Becker was a minor he did not have full authority to represent him at Donalsonville, but after his majority he did, and that "I may have written him to sell the land to the best advantage. I believe I did, probably a month or two before the sale of the mortgages." The defendants were contending that the offer of August 15 had expired, and that the sale which eventually took place had no connection with that offer, and consequently did not include the land in dispute. In view of this contention there were such issues between the parties as, in connection with the other evidence as to the consummation of the sale and the acceptance of the purchase-price by E. C. Becker, and as to the right of B. A. Becker to rep-

resent him as agent, authorized the admission of the evidence objected to.

For similar reasons it was not error, over the objection that it was mere hearsay, to admit in evidence a letter and telegram from B. A. Becker to J. E. Donalson, dated March 6, 1898, to the effect that B. A. Becker was of the opinion that he could get E. C. Becker to accept a certain sum for his interest in the Donalson Lumber Company, especially as soon thereafter E. C. Becker did submit to J. E. Donalson a proposition to substantially the same effect as that which B. A. Becker thought that he might induce E. C. Becker to make.

Nor was it error, over the objection that it was irrelevant, to permit the witness Donalson to testify concerning the circulars advertising the property ·of the Donalson Lumber Company for sale, referred to in his evidence hereinabove quoted: "I mailed one of them [the circulars] by due course of mail to Mr. E. C. Becker, at St. Louis, Mo., properly sealed and stamped, and the proper number of two-cent stamps on it, and mailed to Mr. Becker in St. Louis, Mo., with the proper address at which we had been addressing him, and deposited in the post-office at Donalsonville, Ga.," notwithstanding E. C. Becker testified that he did not receive the circular until after the sale.

Nor was it error to permit the witness Donalson to testify: "We had them [the circulars] there in the office of the Donalson Lumber Company. I consulted with Mr. B. A. Becker frequently about this matter, and read this [the circular] to him in manuscript before I ever had it printed, and I read it to B. A. Becker in manuscript, and there was a number of them lying on his desk. I don't know whether he ever read it afterwards or not;" the objection to the evidence being that it was irrelevant, and that no notice to or conduct of B. A. Becker could bind or affect the rights of E. C. Becker by estoppel or otherwise, and that the rights of E. C. Becker were the only ones insisted on by the defendants.

Nor was it error to admit the testimony of John E. Donalson, as follows: "I told B. A. Becker that Williams would buy the properties, but did not wish to pay more than $15,000 in cash, and would give his notes for the remainder, and he [B. A. Becker] asked me what he was to get, and I told him, 'You get the offer your father made of $29,000.' He said, 'That has been some time

41

ago.' I replied, 'Yes, but we are willing to pay the interest; make it up, and give us a memorandum of the amount, so we can arrange it.' He went to his desk and began to write. The train was approaching, and about the time he finished what he had written, the train blew, and I came by him and asked him for the paper and he handed me this paper. Mr. Williams and myself were going to Savannah to get the money to complete the arrangements, and we were going to take that train." The objection to this testimony was, "that it was irrelevant, because no notice to, or acts of, B. A. Becker could bind or affect the rights of E. C. Becker, or raise any estoppel against him, the defendants relying solely on the rights of E. C. Becker."

Nor was it error to admit the testimony of John E. Donalson, as follows: "During that time that the timber was being cut off of that land [the land in controversy] B. A. Becker was there at Donalsonville. We cut that timber, but there was no entry made on the books about it, because we treated it as our own. B. A. Becker was also superintendent, about that time, of the logging teams. The timber was hauled to a place called Rillaville, about two miles from Donalsonville, which was the terminus of the tram-road, and there put on the log-train and brought to the mill. Mr. B. A. Becker was down that tramroad nearly every day, and made up the pay-rolls, and he knew as much about the business as I did. He was right there and knew all about it, and knew that the timber was being cut. We cut that timber during 1894 and 1895; and in the fall of '96 we turpentined it. B. A. Becker was there at Donalsonville then and all during the two years and a half that we were timbering it, and during the years 1896, 1897, 1898, and 1899, while we were turpentining it. He was bookkeeper and superintendent, and looked after the physical properties. Those lands were located about three miles from the mill, and not over one fourth of a mile from the tramroad. Mr. B. A. Becker was superintendent of the mill, and had charge of the logging and everything else, and his duties frequently called him into the woods; in fact as often as he could leave his books he was there. He was constantly in the woods, probably two or three times a week, on the road looking after things. In 1898 and 1899, at the time we had gone beyond Rillaville, I could stand on the car and see those white boxes in the fall of the year one fourth of a mile, and down at the corner

where we crossed one forty-three, one half of the lot next to it, one forty-two, was turpentined, and there was an open field between that lot and a portion of this timber." The objection urged to its admissibility was that the evidence was irrelevant, and that no notice to or conduct of B. A. Becker could bind or affect the rights of E. C. Becker, it being contended that B. A. Becker was not the agent of E. C. Becker, or otherwise in privity with him, so·as to bind him by knowledge or by estoppel, at the time referred to in said testimony. Some of this evidence related to acts tending to show notice to B. A. Becker before he had attained his majority, while other parts of it related to such acts as occurred after his attainment of majority, and of which he must have had knowledge. Even if it would have been improper to admit the evidence as to acts which occurred before his majority, the evidence was objected to as a whole; and the act which occurred after the attainment of majority by B. A. Becker, being clearly admissible as tending to show notice to him as the agent of E. C. Becker, the testimony as a whole should not be excluded, and it was not error to overrule the objection.

Nor was it error to overrule the objections urged to the admissibility of the evidence set out in the thirteenth ground of the amendment to the motion for new trial, which was alleged to be, but was not, all of the evidence tending to show agency upon the part of B. A. Becker for E. C. Becker.

3. The fourteenth ground of the amendment to the motion for new trial begins as follows: "Because movant contends plaintiffs in said case claiming that the defendants were estopped to set up title to the land in controversy, subsequent to the sale by E. C. Becker and B. A. Becker, to W. T. Williams, of the mortgages and other interests in the Donalson Lumber Company, on October 17th, 1899, for the reason that W. T. Williams was led, by the conduct and silence of E. C. Becker and B. A. Becker, to believe that the lands in controversy belonged to the Donalson Lumber Company, when the said W. T. Williams made said purchase," etc. The ground then sets forth that the court erred in excluding from evidence certain testimony of John E. Donalson, which the defendants sought to bring out, to the effect that Williams did not purchase the land in controversy for himself alone, but for himself and Donalson, and that there was an understanding between them

that a new company should be organized after the purchase of the land, which should take over all the property of the Donalson Lumber Co., etc. It does not appear anywhere in the record that the plaintiffs made any such claim as to estoppel against the Beckers; nor does it appear from the record that the plaintiffs claimed that Williams bought the property for himself; but on the contrary it was set forth in the petition that Williams and Donalson purchased from the Beckers, for a given sum, all their interest in the Donalson Lumber Company. Moreover, it appears from the brief of evidence that John E. Donalson testified substantially to everything that this ground of the motion complains that the court would not allow him to testify to.

4. The fifteenth ground of the amendment to the motion complains as follows: Defendants offered in evidence a certain statement of facts made in 1898 by J. E. Donalson, relative to the organization of the Donalson Lumber Company, its assets and liabilities, which, among other things, recited that specified portions of the capital stock of the corporation which had been issued to B. A. Becker and E. C. Becker were issued without any consideration having been paid to the corporation therefor. After stating the facts, the question was propounded to an attorney at law: "Would the creditors of the Donalson Lumber Company, in view of the above recitals, have the power to force Mr. E. C. Becker and B. A. Becker to pay into the company the full value of their stock, for which they never paid anything, or to pay so much thereof as would be necessary to liquidate their claims." The attorney advised that the stockholders named would be liable to the creditors. The statement of facts was offered in evidence alone, and also in connection with the opinion to which it was attached; and upon objection urged by the plaintiffs that the documents were irrelevant, the court excluded them. This evidence was not admissible, as contended by counsel for plaintiffs in error in their brief filed in this court, for the reason that it "showed that Mr. Donalson as well as Mr. Becker had participated in the illegal organization of the corporation, and no rights could grow out of such a transaction." It is not made to appear in what way the organization of the corporation was illegal, or how the question at issue between the parties to the case could be affected by such evidence.

5.   The sixteenth ground complains that the court, after charging the jury: "By a preponderance of the testimony is meant that superior weight of the evidence upon the issues in the case, which, while not enough to wholly free the mind from a reasonable doubt, is yet sufficient to incline the reasonable and impartial minds of the jury to one side of the issue rather than to the other," then charged: "The burden is upon the defendant in this case to make out his case under the rule of law just given you, and in the cross-bill filed by the defendant the burden is upon him, the defendant, to make out against the plaintiff under the same rule of law the contentions set out therein." The exceptions to the charge were as follows: " (a) Because the same was confusing to the jury, in that the effect of said charge was to place the burden upon the defendant in all branches of the case; and (b) because, even if the use of the word 'defendant,' where it first occurs in said last-quoted charge were a mere slip of the tongue, and even if the jury had so understood it, and understood that the court intended to use the word 'plaintiff,' still movants insist that the charge was error, for the reason that, the plaintiffs' case being one for specific performance of an alleged parol contract for the sale of land, movants insist that the plaintiffs should be required to make out their case by evidence so clear and unequivocal as to satisfy the minds of the jury to a reasonable. certainty, and the rule as to preponderance of evidence as defined by the court in the charge first quoted in this ground would not apply." It is evident that the use of the word "defendant" was a mere slip of the tongue, and that the word "plaintiff" was intended to be used by the judge. This clearly appears from the context in which this instruction was given, as well as the full, clear, and explicit instructions elsewhere given on the subject of the burden of proof. The charge as to the preponderance of evidence was not error in view of an instruction elsewhere given, that "A parol contract for land should be so clearly, strongly, and satisfactorily shown and proven as to leave no reasonable doubt as to the agreement or contract." This instruction was certainly as strong as the defendants were entitled to. *Warren* v. *Gay,* 123 *Ga.* 243 (51 S. E. 302).

6-8.   The rulings announced in the sixth, seventh, and eighth headnotes do not require elaboration.

*Judgment affirmed.   All the Justices concur.*